

FILED

**NOVEMBER 27, 2007**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| THE UNITED STATES LIFE | ) | |
| INSURANCE COMPANY IN THE | ) | |
| CITY OF NEW YORK, | ) | |
| | ) | No. |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| YOUSIF TOMA, | ) | |
| | ) | |
| Defendant. | ) | |

**07 C 6653**

**JUDGE DER-YEGHIAYAN
MAGISTRATE JUDGE NOLAN**

### COMPLAINT FOR RESTITUTION

Plaintiff, THE UNITED STATES LIFE INSURANCE COMPANY ("U.S. Life"), by its attorneys, Michael J. Smith and Warren von Schleicher, hereby submits its Complaint for Restitution against the defendant, YOUSIF TOMA ("Toma"), pursuant to the Employee Retirement Income Security Act, 29 U.S.C. §1001 *et seq*. ("ERISA"), 29 U.S.C. §1132(a)(3) and the federal common law of ERISA:

### NATURE OF THE ACTION

1.      This is an action by U.S. Life for equitable relief pursuant to 29 U.S.C. §1132(a)(3), or alternatively, pursuant to the federal common law of ERISA, in order to recover overpaid long term disability insurance benefits paid to Toma.

2.      The Tempel Steel Plan (the "Plan") is an employee welfare benefit plan established, maintained and endorsed by the Tempel Steel Company ("Tempel Steel") pursuant to ERISA.  The Plan provides, *inter alia*, long-term disability insurance coverage to eligible employees of Tempel Steel.

3.      U.S. Life is the claims administrator and a fiduciary of the Plan.   Toma was a participant in and a beneficiary of the Plan, pursuant to 29 U.S.C. §1002(7) and (8), respectively.

4.     The Plan is funded through a contract of insurance, Policy No. G-232,112 ("Group Policy"), issued to Tempel Steel by U.S. Life. A true and correct copy of the Group Policy, Certificate of Insurance, which is the governing Plan document, is attached hereto as Exhibit A.

## JURISDICTION

5.     The claim asserted herein arises under 29 U.S.C. §1132(a)(3) and, alternatively, the federal common law of ERISA.  Federal jurisdiction is based on federal question jurisdiction pursuant to 28 U.S.C. §1331.  The district court has jurisdiction over the parties and over the subject matter of this dispute in accordance with 29 U.S.C. §§1132(e)(1) and (f).  Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

6.     Toma is a resident of Cook County, Illinois and, therefore, a citizen of the State of Illinois.

7.     U.S. Life is a corporation duly organized and existing under and by virtue of the laws of the State of New York, with its principal place of business in New York, New York. U.S. Life, therefore, is a citizen of the State of New York.

## COUNT I

8.     As part of his employment as a Material Handler at Tempel Steel, Toma was an insured under the Group Policy and was a member of an eligible class of employees.

9.     In July 2004, Toma, through his insurance broker, submitted a claim for long term disability benefits under the Group Policy.  U.S. Life, through its claims administrator, Disability Reinsurance Management Services, Inc. ("Disability RMS") approved Toma's claim, determined his disability date to be October 28, 2003 and paid long term disability benefits to him, after

completion of the 180-day elimination period, for the period from April 25, 2004 through February 25, 2005 at the rate of $1,701.26 monthly.

10.     Toma, whose date of birth is January 7, 1950, was 53 years old on the date that he first became unable to work (October 28, 2003).  Pursuant to the Group Policy, Toma was eligible to receive disability benefits for a maximum period of 2 years.  (Exhibit A, Group Policy, p. G-19001, SCH).

11.     The Group Policy provides that an insured member's long term disability benefit is reduced on account of other income benefits, which includes, *inter alia*, amounts an insured receives or is entitled to receive as payment under the Federal Social Security Act.  (Exhibit A, Group Policy, p. G-19001 LTDB-3).

12.     In its August 12, 2004 approval letter, U.S. Life, through its claims administrator, Disability RMS, advised Toma, *inter alia*, that, pursuant to the Group Policy, "any other income benefits you are eligible to receive such as Social Security . . . will be subtracted from your monthly benefit."   In addition, in that same letter, Toma was advised that the Group Policy specifies that monthly disability benefits paid to him pursuant to the Group Policy would be reduced by any amount paid or payable from Primary and Family Social Security Disability and Retirement benefits.  An Agreement Concerning Benefits was enclosed with the August 12, 2004 letter to Toma which, *inter alia,* advised Toma that, if an overpayment of benefits by U.S. Life resulted from Toma's receipt of Social Security Disability or Retirement benefits, U.S. Life may file appropriate lien or claim to protect its rights to recover any overpayment of benefits.  (A copy of the August 12, 2004 letter, together with the Agreement Concerning Benefits, from Disability RMS as claims administrator for U.S. Life is attached hereto as Exhibit B).

13.     On or about February 16, 2005, U.S. Life became aware that Toma had been approved to receive Social Security Disability benefits when he checked the appropriate box on his Supplementary Proof Of Loss dated February 16, 2005.  A copy of Toma's Supplementary Proof of Loss dated February 16, 2005 is attached hereto as Exhibit C.

14.     U.S. Life, through its claims administrator, Disability RMS, advised Toma, in its letter of February 16, 2005, that, as he was informed in the August 12, 2004 approval letter, any Social Security Disability benefits he was awarded are offsets to his long term disability benefit pursuant to the Group Policy.  In the February 16, 2005 letter, Toma was advised that no further benefits would be released to him until he provided U.S. Life with a copy of his award so that a recalculation of his monthly disability benefits could be performed.  A copy of the February 16, 2005 letter from U.S. Life, through Disability RMS, is attached hereto as Exhibit D.

15.     On or about March 25, 2005, U.S. Life was made aware, through its own investigation, that Toma had begun receiving Social Security Disability benefits under the Social Security Administration as of April, 2004 in the monthly amount of $1,794.00.  During the period from April 25, 2004 through February 25, 2005, Toma received a total of $17,012.60 in long term disability benefits from U.S. Life; during that same period, Toma also received a total of $17,940.00 in Social Security Benefits from the Social Security Administration.

16.     As a result of Toma's receipt of Social Security Benefits and after reconciliation of all amounts due and all amounts paid, U.S. Life has overpaid long term disability benefits to Toma in the amount of $13,060.50. Toma, therefore, is indebted to U.S. Life in the amount of $13,060.50, plus interest thereon, since April 25, 2004.

17.     U.S. Life, by letters dated March 29, 2005, April 29, 2005, August 21, 2005 and September 23, 2005 and January 25, 2006 (copies of which are attached hereto as Group Exhibit

E), requested Toma to pay to U.S. Life the monies Toma has improperly received as an overpayment of long term disability benefits and to satisfy his indebtedness to U.S. Life in the amount current amount of $13,060.50. Toma, however, failed and refused and continues to fail and refuse to pay said amount to U.S. Life.

18.    At the time Toma received Social Security Benefits constituting other income benefits subject to reduction of the U.S. Life disability benefit payments pursuant the Group Policy, an equitable lien by agreement arose on the long term disability benefits paid by U.S. Life and received by Toma in the total amount of $13,060.50, pursuant to 29 U.S.C. §1132(a)(3). Alternatively, U.S. Life requests the imposition of an equitable lien on the long term disability benefits paid by U.S. Life and received by Toma in the total amount of $13,060.50, pursuant to 29 U.S.C. §1132(a)(3).

19.    U.S. Life seeks to recover $13,060.50 from Toma, and prejudgment interest, pursuant to principles of equitable restitution and 29 U.S.C. §1132(a)(3), or alternatively, under the federal common law of ERISA.  U.S. Life further seeks to recover its reasonable attorneys' fees and costs of suit pursuant to 29 U.S.C. §1132(g).

WHEREFORE, plaintiff, THE UNITED STATES LIFE INSURANCE COMPANY IN THE CITY OF NEW YORK, requests judgment against defendant, YOUSIF TOMA, in the amount of $13,060.50 for the overpayment of benefits during the period of April 25, 2004 until February 25, 2005, plus court costs, prejudgment interest, reasonable attorneys' fees and for such other relief that the court in its discretion may deem appropriate.

Michael J. Smith                         Respectfully submitted,
Warren von Schleicher
Smith, von Schleicher & Associates
39 S. LaSalle St., Suite 1005           By: /s/ Michael J. Smith
Chicago, Illinois  60603                    Attorney for Plaintiff, The United States Life
(312) 541-0300                              Insurance Company in the City of New York

5

**THE UNITED STATES LIFE** Insurance Company In the City of New York

*(Called United States Life)*

125 Maiden Lane
New York, New York  10038

---

## CERTIFICATE OF INSURANCE

United States Life certifies that certain eligible persons are insured for the benefits described in this certificate.  This insurance is subject to the eligibility and effective date requirements described on pages E of this certificate.

### IMPORTANT NOTICE

This certificate is a summary of the group policy provisions which affect **your** insurance.  It is merely evidence of the insurance provided by such policy for TEMPEL STEEL COMPANY (the Policyholder).

The group policy is a contract between United States Life and the Policyholder.  It may be changed or ended without notice to or consent of any insured person.

This certificate replaces any certificate previously issued by United States Life to you under the group policy.

The benefits described in this certificate are provided by group policy no. G-232,112

JUDGE DER-YEGHIAYAN
MAGISTRATE JUDGE NOLAN

G-19001
FP

G-232,112

## CERTIFICATE INDEX

Each page in this certificate has a 2 line code at the bottom left of the page.  The code "G-19001" means that the page belongs to the certificate series.  The letter or letters below the certificate code represents a phonetic description of the particular section (FP = Face page; E = Eligibility).  If a section requires more than one page, the descriptive letter is followed by a number indicating its order in the section (E-2 is the second page in the Employee Eligibility section).

This index refers you to the phonetic codes.

| SECTION | PAGE(S) |
|---|---|
| Face Page | FP |
| Schedule of Benefits | SCH |
| Definitions | DEF |
| **Employee Eligibility** | |
| Eligible Classes Of Employees | E-1 |
| Date Employees Are Eligible For Insurance | E-1 |
| Date Employees' Insurance Takes Effect | E-2 |
| Actively At Work Requirement | E-2 |
| Date Employees' Insurance Ends | E-2 |
| Continuation of Insurance With Premium Payment | E-3 |
| Long Term Disability Benefits | LTDB |
| Pregnancy Benefits | P |
| End Of Insurance Provided By The Group Policy | END |
| **General Provisions** | |
| Incontestability | GP |
| Misstatements | GP |
| Payment For Expenses Incurred At Your Death | GP |
| Payment To A Minor Or Incompetent | GP |
| Autopsy | GP |
| Assignment | GP |
| Compliance With Law | GP |
| Gender | GP |
| **General Provisions For Accident And Health Insurance** | |
| Filing A Claim | GPAH |
| Payment of Claims | GPAH |
| Physical Exams | GPAH |
| Time Limit On Legal Actions | GPAH |
| Consumer Complaint Notice | CCN |

## DEFINITIONS

ACTIVE WORK or ACTIVELY AT WORK means that you perform each duty of your job for full pay.  This must be done at the Policyholder's place of business or any place to which such business requires you to travel.

FULL-TIME means active work on the Policyholder's regular work schedule for the class of employees to which you belong. The work schedule must be at least 30 hours a week.

PHYSICIAN means:

- a medical practitioner licensed to provide medical services and perform general surgery, or
- any other practitioner whose services, by law of the state where such services are performed, must be covered by the group policy.

Each such person must be licensed in the state where he performs the service and must act within the scope of that license. He must also be certified and/or registered if required by such state.

HOSPITAL means a licensed institution which is approved by the Joint Commission on Accreditation of Hospitals. "Hospital" does not mean a place, or part of one, which is used mainly for:

- the aged
- the chronically ill
- convalescents
- drug addicts
- alcoholics
- a rest home
- a nursing home
- custodial, educational or rehabilitory care.

WAITING PERIOD means a period of consecutive days of disability for which no benefit is payable.  The duration of the waiting period is shown in the Schedule of Benefits.  The waiting period begins on the first day of disability occurring after the effective date of your insurance.

G-19001
DEF(A)

LTDB
TG

# SCHEDULE OF BENEFITS

## EMPLOYEE BENEFITS

### LONG TERM DISABILITY BENEFITS

| | |
|---|---|
| Waiting period during disability | 180 days |
| Benefit per month of disability: | |
| • maximum total disability benefit for total disability | 50% of your basic monthly pay, up to $6,000 |
| • maximum progressive partial disability benefit for partial disability | the monthly benefit that would be payable to you during total disability LESS the wages you earn while partially disabled |
| • minimum for each disability | $50 |

Maximum benefit period for each injury or sickness:

| | | |
|---|---|---|
| • if total disability begins prior to age 66 | | 2 years |
| if total disability begins at attained age: | 66 | 21 months |
| | 67 | 18 months |
| | 68 | 15 months |
| | 69 and over | 12 months |

| | |
|---|---|
| • for partial disability | until the earliest of: |
| | • the end of the maximum benefit period described above for total disability, or |
| | • the date you earn 85% or more of your basic monthly pay |
| Final survivor benefit payable at employee's death | an amount equal to 3 times the last monthly benefit* paid to you |

*The amount of the last monthly benefit will not reflect a reduction made for wages earned while partially disabled.

**Change In Amount Of Your Insurance**

A change in your status may result in a change in your amount of insurance.

**For a decrease**

If insurance is to end or decrease, such change will take effect on the date of change.

**For an increase**

You must be actively at work in an eligible class on the date an increase in your insurance is to take effect. If you are not, such increase will take effect on the day you resume such work.

The date the increase is to take effect might not be a scheduled workday. If so, you will be considered actively at work on such date if you were actively at work on your last scheduled workday.

G-19001
SCH

## EMPLOYEE ELIGIBILITY

**ELIGIBLE CLASSES OF EMPLOYEES**

All full-time hourly employees of the Policyholder, but not those who are temporary, part-time or seasonal.

**DATE EMPLOYEES ARE ELIGIBLE FOR INSURANCE**

Each employee in an eligible class on January 1, 2002 will be eligible for insurance on the later of:

- that day, or
- the first day after he completes 90 days of full-time work in an eligible class.

Each employee who enters an eligible class after January 1, 2002 will be eligible for insurance on the first day after he completes 90 days of full-time work in such class.

**Rehired employees**

The Policyholder may choose to have insurance for former employees take effect on the date they re-enter an eligible class.  This choice may apply to all or some classes of employees.  Such former employees must be rehired within 6 months after their insurance ended.  The Policyholder must notify United States Life of this choice in writing.  If this choice is made, it will apply to all rehired employees in the same class.  If it is not made, rehired employees must complete the waiting period(s) shown above.

# EMPLOYEE ELIGIBILITY (Continued)

## DATE EMPLOYEES' INSURANCE TAKES EFFECT

Your insurance will take effect on the date you are eligible.

## ACTIVELY AT WORK REQUIREMENT

You must be actively at work in an eligible class on the date your insurance is to take effect. If you are not, such insurance will take effect on the day you resume such work.

The date insurance is to take effect might not be a scheduled workday. If so, you will be considered actively at work on such date if you were actively at work on your last scheduled workday.

## DATE EMPLOYEES' INSURANCE ENDS

Your insurance will end at the earliest of:

1. the date the group policy ends;

2. the date insurance ends for your class;

3. the end of the period for which the last premium has been paid for you; or

4. the date employment ends; except as stated in the CONTINUATION OF INSURANCE WITH PREMIUM PAYMENT provision, ceasing full-time work in an eligible class will be considered the end of employment.

# EMPLOYEE ELIGIBILITY (Continued)

## CONTINUATION OF INSURANCE WITH PREMIUM PAYMENT

The Policyholder may choose to continue your insurance by paying premiums for you if you cease full-time work due to:

• disability
• layoff
• part-time work
• leave of absence, or
• strike.

He may do so only for the limited period stated in the group policy.

If you cease full-time work, contact the Policyholder right away for details on continuation of your insurance, if any.

**LONG TERM DISABILITY BENEFITS**

If, while insured, you become disabled and continue to be so disabled past the waiting period, United States Life will pay to you the benefits described below.

The waiting period is shown in the Schedule of Benefits.

**DEFINITIONS**

TOTAL DISABILITY means:

- during the waiting period and next 24 months, your complete inability to perform the material duties of your regular job; "your regular job" is that which you were performing on the day before total disability began

- after such 24 months, your complete inability to perform the material duties of any gainful job for which you are reasonably fit by training, education or experience.

The total disability must be a result of an injury or sickness. To be considered totally disabled, you must also be under the regular care of a physician.

PARTIAL DISABILITY means that you are not able to perform the material duties of your regular job, but you are able to perform:

- at least one of these duties on a part-time basis, or
- at least one, but not all, of these duties on a full-time basis.

"Your regular job" is that which you were performing on the day before disability began.

The partial disability must be a result of an injury or sickness.

DISABILITY means total and/or partial disability.

BASIC MONTHLY PAY means your monthly rate of pay from the Policyholder. Such rate will be that in effect on the day before disability begins. "Basic monthly pay" includes commissions, but not bonuses, overtime pay or other extra compensation. Commissions will be averaged for the lesser of:

- the 24 month period of employment before the date disability begins, or
- the period of employment.

**TOTAL DISABILITY BENEFIT**

The total disability benefit will begin to accrue on the day after the waiting period ends.

The total disability benefit will be paid monthly in the amount shown in the Schedule of Benefits, reduced by other income benefits as described on page LTDB-3.

Limited benefits will be paid for disability due to:

- alcoholism, drug addiction and mental, nervous or emotional disorders; and
- pre-existing conditions.

These benefits are described on page LTDB-2.

**PROGRESSIVE PARTIAL DISABILITY BENEFIT**

The progressive partial disability benefit will begin to accrue on the day after the waiting period ends. During the waiting period, you may be either totally disabled, partially disabled or a combination of both. You do not have to be totally disabled before receiving a progressive partial disability benefit.

The progressive partial disability benefit will be paid monthly in the amount shown in the Schedule of Benefits.

Limited benefits will be paid for disability due to:

- alcoholism, drug addiction and mental, nervous or emotional disorders; and
- pre-existing conditions.

These benefits are described on page LTDB-2.

**BENEFITS FOR PART OF A MONTH**

To determine the benefit to be paid for a period of less than a full month:

- divide the benefit by 30
- multiply the result by the number of days in such period.

G-19001
LTDB-1

(2-9)
TG

LONG TERM DISABILITY BENEFITS (Continued)

## DURATION OF BENEFITS

Monthly benefits will be paid up to the maximum benefit periods shown in the Schedule of Benefits.

The benefit will end on the date:

1. you fail to give required proof of continuing disability or verification of earnings, as needed;
2. your disability ends;
3. the maximum benefit period ends; or
4. you die.

If the group policy ends, this will not act to end the maximum benefit period.

## PREGNANCY BENEFITS

No pregnancy benefits will be paid by this section, except as described on page P.

## LIMITED MONTHLY BENEFITS TO BE PAID FOR ALCOHOLISM, DRUG ADDICTION AND MENTAL, NERVOUS OR EMOTIONAL DISORDERS

If disability is due to alcoholism, drug addiction or a mental, nervous or emotional disorder, or any combination of these, a maximum of 24 monthly benefits will be paid while such disability continues.  Benefits may be paid beyond this 24 month period, as follows:

**If you are confined in a hospital on the last day of the month for which the 24th monthly benefit is to be paid**

Benefits will continue to be paid until you are discharged.

If you are still disabled when discharged, benefits will continue to be paid for the period disability continues, up to 90 days. If you are reconfined during this 90 day period for 14 or more consecutive days, benefits will continue to be paid during such second confinement.  When discharged, benefits will continue to be paid for the period disability continues, up to a final period of 90 days.

**If a hospital confinement begins after 24 monthly benefits have been paid**

Benefits will be paid for the period of confinement if:

- disability continued from the end of the waiting period to the date of confinement, and
- the confinement is for 14 or more consecutive days.

**Note:  No benefits will be paid for alcoholism, drug addiction and mental, nervous or emotional disorders beyond the maximum benefit period shown in the Schedule of Benefits.**

## LIMITED MONTHLY BENEFITS TO BE PAID FOR PRE-EXISTING CONDITIONS

PRE-EXISTING CONDITION means an injury or sickness for which you:

- incurred charges
- received medical treatment
- consulted a physician, or
- took prescribed drugs

within 3 months before you became insured by this section.

If disability is due to a pre-existing condition and it begins within 12 months of the date you become insured by this section, no benefits will be paid **unless you have not:**

- incurred charges
- received medical treatment
- consulted a physician, or
- taken prescribed drugs

for such condition, or any complication of it, for 6 continuous months, while insured.

If disability is due to a pre-existing condition and it begins more than 12 months after the date you become insured by this section, benefits will be paid as they accrue.

LONG TERM DISABILITY BENEFITS (Continued)

## SURVIVOR BENEFIT TO BE PAID IF YOU DIE

If you die while disabled, United States Life will pay to the eligible survivor the final survivor benefit shown in the Schedule of Benefits **if:**

- such disability had continued for 180 or more consecutive days, and
- you were receiving benefits for such disability.

ELIGIBLE SURVIVOR means your lawful spouse if living on the date a benefit payment is due.  If the spouse is not living, the term means your dependent children.

## SUCCESSIVE PERIODS OF DISABILITY

Successive periods of disability will be considered one period of disability unless they are:

- due to unrelated causes, or
- separated by a return to full-time work for 6 or more continuous months.

A separate waiting period will apply for each separate period of disability.

If you receive long term disability benefits from another group plan which replaces this section, this provision will not apply to you.

## REDUCTION ON ACCOUNT OF OTHER INCOME BENEFITS

Other income benefits are those listed below which are provided to you.

Benefits provided to your dependents by reason of your disability or retirement will be considered to be provided to you.

If you are age 65 or over and are eligible for retirement benefits, you will be presumed to receive all such benefits for which you are eligible.

Each monthly benefit will be reduced by the sum of any income you receive that month from:

- an employer or self-employment
- an employer retirement plan, if such plan is elected by the employee
- the retirement system of any government agency
- the Federal Social Security Act, the Railroad Retirement Act, the Canada Pension Plan or the Quebec Pension Plan*
- an employer benefit plan providing disability income benefits, if such benefits do not reduce the employee's life insurance amount or if such plan is elected by the employee
- the Veterans Administration or any other government agency
- a workers' compensation or similar law.

*Unless you notify United States Life to the contrary, it will be assumed that the maximum family benefit is paid to you under these Acts or Plans.

G-19001
LTDB-3

**LONG TERM DISABILITY BENEFIT (Continued)**

**REDUCTION ON ACCOUNT OF OTHER INCOME BENEFITS (Continued)**

**Limited reduction - the "100% all sources" formula for partial disability**

**If:**
the monthly benefit to be paid under this section, before reduction, plus your part-time earnings and the other income benefits listed above, equals 100% or less of your basic monthly pay

**Then:**
no reduction will be made under this section.

**If:**
the monthly benefit to be paid under this section, before reduction, plus your part-time earnings and the other income benefits listed above, exceeds 100% of your basic monthly pay

**Then:**
a reduction will be made, but will be limited to the amount by which the total income benefit exceeds such 100%.

**Income increases**

An increase in income received from an employer or self-employment after the first month that benefits are paid for a period of disability will be used to determine the monthly benefit reduction.  Such an increase in the remaining other income benefits will **not** be used to determine the monthly benefit reduction.

**Lump sum payments under other plans**

Other income benefits listed above may be paid in a lump sum.  If so, United States Life will pro rate the sum over the period that would have applied had the payment not been made in a lump sum.  If no period had been set, the lump sum will be pro rated on a monthly basis over your life expectancy, as determined by United States Life.

**CONTINUATION OF INSURANCE WITHOUT PREMIUM PAYMENT**

No premium is due for you while you are receiving monthly benefits.  When you stop receiving monthly benefits, premiums must again be paid when due.

**EXCLUSIONS**

No monthly benefit will be paid for disability due to:

- intentionally self-inflicted injury
- a war or an act of war, or
- committing a crime or an attempt to do so.

**PREGNANCY BENEFITS**

**FOR COMPLICATIONS OF PREGNANCY**

The benefits to be paid by any section of the group policy for a complication of pregnancy will be the same as those to be paid for a sickness.

COMPLICATIONS OF PREGNANCY means:

- conditions distinct from pregnancy, but caused or affected by it, which require hospitalization, provided the pregnancy does not terminate during such hospitalization

- non-elective caesarean section
- a terminated ectopic pregnancy, or
- spontaneous termination of pregnancy which occurs when a viable birth is not possible.

**FOR PREGNANCY PAID AS-ANY-OTHER-SICKNESS**

As used in the group policy for the benefits shown below, the term "sickness" includes:

- pregnancy
- childbirth
- abortion
- complications of any abortion, and
- related medical conditions

all referred to as "pregnancy."

**For long term disability benefits**

The benefits to be paid by the group policy for disability due to pregnancy will be the same as those to be paid for disability due to sickness.

**END OF INSURANCE PROVIDED BY THE GROUP POLICY**

**IF PREMIUM IS NOT PAID - GRACE PERIOD**

Each premium, after the first, may be paid up to 31 days after its due date.  This period is the grace period.  The insurance provided by the group policy will stay in effect during this period.  If the premium is not paid by the end of this period, such insurance will end at that time.

United States Life may extend the grace period by written notice.  Such notice will state the date insurance will end if the premium remains unpaid.

Premiums must be paid for a grace period and any extension of such period.

G-19001
END

## GENERAL PROVISIONS

## MISSTATEMENTS

A person's age, sex or any other data may be misstated.  If so, the correct data will be used to determine if insurance is in force.  If insurance is in force, the premium and/or benefits will be adjusted according to the facts.

## PAYMENT TO A MINOR OR INCOMPETENT

If any beneficiary or payee is a minor or is incompetent to receive payment, United States Life will pay his guardian.  United States Life will not be liable for such payment after it is made.

## ASSIGNMENT

United States Life will not be bound by any assignment unless it is in writing and is recorded at its home office.  United States Life is not responsible for the validity of an assignment.

## COMPLIANCE WITH LAW

On the date the group policy takes effect, some of its provisions may conflict with an applicable law. If so, any such provision is changed to comply with the minimums required by such law.

## GENDER

Male pronouns will be read as female where it applies.

# GENERAL PROVISIONS FOR ACCIDENT AND HEALTH INSURANCE

## FILING A CLAIM

To file a claim, a person must complete a proof of claim form.

Your employer may have these forms.  If so, get the form, complete it and send it as explained in **Steps 3 and 4** below.

If your employer does not have these forms, follow these steps:

### Step 1:

A claimant should send a written notice of claim to United States Life within 20 days of a loss.  No special form is required to do this.  The notice need only identify the claimant and the Policyholder.

### Step 2:

When United States Life receives the notice, it will send a proof of claim form to the claimant.

### Step 3:

The claimant should receive the proof of claim form within 15 days of the date United States Life received the notice of claim.

If the form is received within such time, it should be completed, as instructed, by all persons required to do so.  Additional proof, if required, should be attached to the form.

If the form is not received within such time, the claimant may provide written proof of claim to United States Life on any reasonable form.  Such proof must state the date the injury or sickness began and the nature and extent of the loss.

### Step 4:

Proof of claim must be sent to United States Life within 30 days after the waiting period (see Schedule of Benefits).  United States Life may require more proof as often as needed to verify disability.

If a notice or proof is sent later than the times shown above, United States Life will not deny or reduce a claim if the notice or proof was sent as soon as possible.

## PAYMENT OF CLAIMS

All benefits will be paid as they accrue.

## PHYSICAL EXAMS

United States Life, at its expense, has the right to examine the insured.  This may be done as often as needed to process a claim.

## TIME LIMIT ON LEGAL ACTIONS

Legal action may only be brought against United States Life during a certain period.  This period begins 60 days after the date proof of claim was filed and ends 3 years after the end of the period within which such proof is required.

G-19001
GPAH

3 yrs
LTD

**THE UNITED STATES LIFE** Insurance Company In the City of New York

*(Called United States Life)*

3600 Route 66
Neptune, NJ 07754
(732) 922-7000          NAIC No.:  70106

**CONSUMER COMPLAINT NOTICE**

**This notice is to advise you that should any complaints arise regarding this insurance, please contact your agent.  If you have additional questions you may contact United States Life at the address and telephone number shown above.**

**If you have been unable to contact or obtain satisfaction from United States Life or the agent, you may contact the Illinois Department of Insurance at:**

**Illinois Department of Insurance
Consumer Division
Springfield, Illinois  62767**

**Written correspondence is preferable so that a record of your inquiry is maintained. When contacting your agent, United States Life or the Department of Insurance, have your policy number available.**

# Disability RMS

*Committed to a higher standard*

**07 C 6653**

**Disability Reinsurance Management Services, Inc.**

One Riverfront Plaza
Westbrook, ME 04092-9700
(877) 489-9784
Fax (866) 376-9480

August 12, 2004

Yousif Toma
4309 N. Wolcott
Chicago, IL  60613

**JUDGE DER-YEGHIAYAN
MAGISTRATE JUDGE NOLAN**

Dear Mr. Toma,

Disability RMS is the claims administrator for United States Life Insurance Company, the Long Term Disability insurance carrier for Tempel Steel.

We are pleased to advise you that your long term disability claim has been approved as we have determined that you currently meet the definition of disability.  The policy defines disability as follows:

TOTAL DISABILITY means:

- during the waiting period and next 24 months, your complete inability to perform the material duties of your regular job; "your regular job" is that which you were performing on the day before total disability began
- after such 24 months, your complete inability to perform the material duties of any gainful job for which you are reasonably fit by training, education or experience.

The total disability must be a result of an injury or sickness.  To be considered totally disabled, you must also be under the regular care of a physician.

PARTIAL DISABILITY means that you are not able to perform the material duties of your regular job, but you are able to perform:

- at least one of these duties on a part-time basis, or
- at least one, but not all, of these duties on a full-time basis.

"Your regular job" is that which you were performing on the day before disability began.

The partial disability must be a result of an injury or sickness.

DISABILITY means total and/or partial disability.

Your disability coverage has a 180 day elimination period that must be satisfied before benefits become payable.  Using a date of disability of  October 28, 2003, benefits became payable on April 25, 2004.

Please feel free to give me a call at the number below if you should have any questions.

Sincerely,

Keith Johnson
Managed Disability Analyst
1-(877) 489-9784

cc:     Atty:  Bryan Flangel
               Katz, Friedman, Eagle, Eisenstein and Johnson
               77 West Washington,  20th Floor
               Chicago,  IL  60602

In regards to your benefit payment, the LTD policy is designed to preserve your monthly income at 50% of your pre-disability income not to exceed the maximum monthly amount of $6,000.00. Therefore, any other income benefits you are eligible to receive such as Social Security Disability, Pension, Retirement, Worker's Compensation or other group insurance benefits will be subtracted from your monthly benefit. However, your monthly benefit will not be less than $50.00, the minimum monthly benefit provided by the policy.

You will be receiving your initial benefit check for the period of April 25, 2004 to August 25, 2004 under separate cover from United States Life Insurance Company in about one week. Future benefit checks will be paid at the end of each monthly benefit period. Benefits will continue while you remain contractually disabled but not beyond the maximum benefit period provided by the policy or its limitation provisions.

We will require periodic updates regarding the status of your condition from you and your attending physician.

**Please keep us advised us of the status of your Worker's Compensation claim appeal. Forward copies of any current correspondence you have received regarding this matter.**

Based on the information we have gathered concerning your disability, it appears you should be eligible for Social Security Disability benefits. As you may be aware, the Long-Term Disability policy specifies that monthly benefits will be reduced by any amount paid or payable from Primary and Family Social Security Disability and Retirement benefits.

If you have not already done so, please make application for Social Security benefits for you and any eligible dependents. Calling your local Social Security office can do this. Please provide us with proof of your application and copy us on all future related correspondence. We will need a copy of your Social Security decision as soon as it is received.

We have enclosed an Agreement Concerning Benefits form that concerns your application for Social Security Disability. You have the option of having us estimate your potential Social Security Disability award and reducing your LTD benefit accordingly or receiving your full LTD benefit while your Social Security application is in process. If you elect the second option and Social Security Disability is awarded retroactively, an adjustment will be made to your benefit at that time and you will be responsible for immediate reimbursement of any overpayment that results on your LTD claim. Please complete this form in its entirety and return it to our office.

A favorable Social Security decision would benefit you and your dependents. The advantages of receiving Social Security benefits include:

1.      Increased Disability Benefits. Though your Social Security benefit would offset your payment from your Long Term Disability carrier, your future Social Security cost of living increases are not offset. Meaning, your combined benefit amount would increase each year.

2.      Increased Social Security Retirement benefits. Did you know that for every year you receive LTD benefits and do not collect Social Security Disability, zero (0) earnings are factored into your Social Security record? This can substantially lower your future Social Security Retirement benefits. Entitlement to Social Security disability will freeze your earnings record and exclude those disabled, non-working years so you can receive a higher Social Security retirement benefit at age 65.

3.      Health Insurance through Medicare Entitlement. Twenty-four (24) months after entitlement to Social Security disability benefits you can become entitled to Medicare benefits. This inexpensive health insurance includes Part A hospital insurance and Part B medical benefits regardless of age.

4.      Trial Work Period - in most cases, entitlement to Social Security disability also entitles you to a trial work period. This will allow you to work for up to nine (9) months while you still receive your full Social Security disability benefits.



# Disability RMS

*Committed to a higher standard*

## AGREEMENT CONCERNING BENEFITS

)

**Insurer:**           **United States Life Insurance Company**

**Policyholder:**       **Tempel Steel**

**Claimant (referred to as "I", "Me", or "My"):** **Yousif Toma**

For valuable consideration set forth herein, the Insurer and I agree as follows:

1. The Policy under which I am insured provides that Long Term Disability benefits will be reduced by Pension/Retirement/Social Security/Worker's Compensation benefits, which are provided to Me or for which I am eligible. **[Benefits provided to My dependents by reason of My disability or retirement will be considered to be provided to Me.]** The Insurer is entitled, under the Policy, to estimate any Pension/Retirement/Social Security/Worker's Compensation benefits my dependents and I may be eligible to receive and reduce my monthly benefit by a corresponding amount, pending the final determination of my Pension/Retirement/Social Security/Worker's Compensation application.

2. I, for myself, my heirs, executors, administrators, and assigns, agree that I am not currently receiving any benefits from Pension/Retirement/Social Security/Worker's Compensation. I have applied for, or will be applying for, benefits from Pension/Retirement/Social Security/Worker's Compensation. I have or will provide the Insurer with proof of my application for these benefits.

3. While a decision concerning my benefits from Pension/Retirement/Social Security/Worker's Compensation is pending, I elect to:

   *Indicate your election by checking #A or #B below*

   (  )  A.  Have my monthly Long Term Disability benefit payment reduced by an estimated amount of Pension/Retirement/Social Security/Worker's Compensation benefits.  When I provide the Insurer with proof of the amount awarded, the monthly policy benefit amount will be adjusted and determination of any underpayment or overpayment will be made at that time. If the final decision from Pension/Retirement/Social Security/Worker's Compensation is a benefits denial, the estimated offset amount will be returned to Me in a lump sum.

   (  )  B.  Receive my monthly Long Term Disability benefit with no estimated reduction for benefits from Pension/Retirement/Social Security/Worker's Compensation. I understand that this may result in an overpayment of my Long Term Disability claim, and I agree to reimburse any overpayment in full immediately following receipt of award for said benefits.  If for any reason the overpayment is not immediately paid in full, then I agree to reduce my monthly benefit below the minimum monthly benefit stated in my Certificate of Insurance until the overpayment is reimbursed in full.

   (Section 5 doesn't apply if Option 3 (A) is selected)

4. I understand and acknowledge that for any Worker's Compensation or Third-party Recovery that would be an offset under the Policy, the Insurer, if permitted by the applicable state law, may file the appropriate lien

or subrogation claim to protect its rights to recover any overpayment made as a result of my election of Option 3 (B) listed above.

5. By electing Option 3 (B) listed above, I understand that the Insurer, under a reservation of its rights, is agreeing not to take this estimated offset. In return, I also agree that if I don't repay promptly any overpayment caused by a Pension/Retirement/Social Security/Worker's Compensation award to Me, the Insurer shall be entitled, in addition to its rights under Option 3 (B) above and the Policy, to:

    (A) Impose a constructive trust on any Pension/Retirement/Social Security/Worker's Compensation lump sum award to recover this overpayment; and

    (B) Sue Me for breach of this agreement to be restored to the Insurer's rightful position with respect to the correct net payments due to Me.

Insured's Signature _____   Witness _____

Date _____

On behalf of: United States Life Insurance Company

By _____   Witness _____

Date _____

# Disability RMS
Committed to a higher standard

Please return completed form to:

Disability Reinsurance Management Services, Inc.
One Riverfront Plaza
Westbrook, ME  04092-9700
Phone: (877) 489-9784
Fax: (866) 376-9480

**Please return both pages by:  March 3, 2005**

## SUPPLEMENTARY PROOF OF LOSS
## LONG TERM DISABILITY - CLAIMANT'S STATEMENT

1. Insured's full name and address (Please Print) Yousif Toma

Home Telephone _773 871 5857_   Employer's Telephone _____

| Date of Birth | Policy No.(s) |
|---|---|
| 01/07/1950 | Social Security No. *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* |

2. Cause of Disability: *Herniated Disc | persistant rectal bleeding*

3. Have you received medical attention since your last report? Yes ☐ No ☐  If "Yes", list: *CSO*

(a) Names of Doctors *Dr Wesley Vapor Chemosurgeon*

(b) Dates of Treatment *July 2004*

**07 C 6653**

**JUDGE DER-YEGHIAYAN**
**MAGISTRATE JUDGE NOLAN**

4. Have you been hospitalized or undergone surgery since your last report? Yes ☐ No ☒  If "Yes", list:

(a) Name of Hospital

(b) Dates of Confinement  *no*

(c) Type of Surgery

5. (a) What are your present complaints?  *Back pain | Leg numbness*

(b) Briefly describe your present daily activities:  *back pain | rectal blud*

6. Date disability began: *10 / 27 / 03*
   Month Day Year

(a) Are you still totally disabled and unable to perform all the duties of your regular occupation? Yes ☒ No ☐

If "Yes" when do you expect to return to your regular occupation? ___/___/___  *not able*
                                                            Month Day Year

If "No" when did you return to your regular occupation? ___/___/___  *n/a*
                                                     Month Day Year

(b) If partially disabled, when did you begin working at your regular occupation? *n/a* ___/___/___
                                                                          Month Day Year

(c) What important occupational duties have you been unable to perform during such partial disability? *non*

(d) Are you now gainfully employed in other than your regular occupation? Yes ☐ No ☒

If "Yes", date you commenced such duties: ___/___/___
                                      Month Day Year

(e) Briefly describe the job and nature of duties performed:

7. (a.) Are you now eligible for, have you applied for, or are you now receiving income benefits from:

| Social Security Disability | | Social Security Retirement | | Other Income Benefits: | Yes | No |
|---|---|---|---|---|---|---|
| Yes ☒ | No ☐ | Yes ☐ | No ☒ | Unemployment Compensation | ☐ | ☒ |
| | | | | State Disability Benefits | ☐ | ☒ |
| ☐ applied | | ☐ applied | | No-Fault Auto Insurance | ☐ | ☒ |
| ☒ approved | | ☐ approved | | Pension Disability | ☐ | ☒ |
| ☐ denied | | ☐ denied | | Regular Retirement | ☐ | ☒ |
| ☐ under appeal | | ☐ under appeal | | Worker's Compensation | ☐ | ☒ |
| | | | | Any other income benefit (Federal, State, VA, etc.) | ☐ | ☒ |

(b.) If answer is "Yes", please give details including amounts received, effective date and name of company and organization or government agency from which benefits are being received. Attach documentation or copies of awards that you have not previously provided.
The statements above are true and complete to the best of my knowledge.

Insured's Signature _____   Date *2/18/02*

# Disability RMS
*Committed to a higher standard*

Please return completed form to:

**Disability Reinsurance Management Services, Inc.**
One Riverfront Plaza
Westbrook, ME 04092-9700
Phone: (877) 489-9784
Fax: (866) 376-9480

## Please Return By: March 3, 2005

## ATTENDING PHYSICIAN'S STATEMENT
### THE PATIENT IS RESPONSIBLE FOR THE COMPLETION OF THIS FORM WITHOUT EXPENSE TO THE COMPANY

Patient's Name: Yousif Toma                    Date of Birth: 01/07/1950

**1. HISTORY**
a. When did symptoms first appear or accident happen?     Date: 10/27/03
b. Date patient ceased work because of disability     Date: 10/27/03
c. Is condition a result of patient's employment?     ☒ Yes  ☐ No
d. Is condition due to a motor vehicle accident?     ☐ Yes  ☒ No
e. Has patient ever had a same or similar condition? (If yes, please describe.)     ☐ Yes  ☒ No
f. Names and addresses of other treating physicians:

g. Have you ever treated patient prior to this? (If yes, for what and when?)     ☒ Yes  ☐ No
   *Fn CAD*

h. Does patient have other disability coverage? (If yes, please identify.)     ☒ Yes  ☐ No

**2. DIAGNOSIS**
a. Diagnosis (including any complications): *Herniated Disc*
b. Subjective symptoms: *numbness / pain / can't work well*
c. Objective findings (include current X-rays, EKG's, laboratory data and any clinical data): *MRI confirmed C-4-C5 disc*

**3. DATES OF TREATMENT**
a. Date of first visit     Date: 10/27/03
b. Date of last visit     Date: 1/10/05
c. Frequency: ☐ Weekly  ☒ Monthly  ☐ Other(specify)

**4. NATURE OF TREATMENT** (surgery, medications, etc.)

**5. EXTENT OF DISABILITY                    ***IMPORTANT*** **
a. Are you aware of the main duties the patient performs in his/her usual work or business?   ☒ Yes  ☐ No
b. Are you aware of the patient's background (education, training, experience, etc.)?   ☒ Yes  ☐ No

Describe any restrictions (what your patient should not do ): *No physical labor*

Describe any limitations (what your patient cannot do ): *none*

**6. CARDIAC (if applicable)**
a. Functional Capacity (American Heart Association): ☐ Class 1 (No Limitation)   ☐ Class 3 (Marked Limitation)
   ☒ Class 2 (Slight Limitation)   ☐ Class 4 (Complete Limitation)
b. Blood Pressure (last visit):
   130 / 80
   Systolic / Diastolic

7. PHYSICAL IMPAIRMENT (As defined in Federal Dictionary of Occupational Titles)

- [ ] Class 1 -- No limitation of functional capacity; capable of heavy work* No restrictions (0-10%)
- [ ] Class 2 -- Medium manual activity* (15-30%)
- [ ] Class 3 -- Slight limitation of functional capacity; capable of light work* (35-55%)
- [ ] Class 4 -- Moderate limitation of functional capability; capable of light work* (35-55%)
- [x] Class 5 -- Severe limitation of functional capacity; capable of clerical/administrative (sedentary) activity* (60-70%)
- [ ] Remarks:

8. MENTAL/NERVOUS IMPAIRMENT (If applicable)

- [ ] Class 1 -- Patient able to function under stress and able to engage in interpersonal relations (No limitations).
- [ ] Class 2 -- Patient able to function in most stress situations and engage in limited interpersonal relations (Slight Limitation).
- [x] Class 3 -- Patient able to engage in only limited stress situations and engage in limited interpersonal relations (Moderate limitation).
- [ ] Class 4 -- Patient unable to engage in stress situations or engage in interpersonal relations (Marked limitation).
- [ ] Class 5 -- Patient has significant loss of psychological, physiological, personal and social adjustment (Severe limitation).
- [ ] Remarks:

Do you believe the patient is competent to endorse checks and direct the use of the proceeds?  [ ] Yes [ ] No

9. PROGRESS
- a. Has patient  [ ] Recovered?  [ ] Improved?  [x] Unchanged?  [ ] Regressed?
  If recovered, date patient able to work: Date:
- b. Is patient  [ ] Ambulatory?  [ ] House confined?  [ ] Bed confined?  [ ] Hospital confined?
- c. Has patient been hospital confined?  [ ] Yes [ ] No

Please give name and address of hospital: Swedish Covenant Hospital 5145 N. California    Admitted _____ Discharged _____

- d. Do you expect any significant improvement in the future?
  (1) If yes, when will patient recover sufficiently to perform the duties of:
  (a) HIS/HER REGULAR JOB?  not able   [ ] Yes [x] No  chg 9/16 0625
      Month Day Year  [ ] 1 Month [ ] 1-3 Months [ ] 3-6 Months [ ] Never
  (b) ANY OTHER TYPE OF WORK  not able
      Month Day Year  [ ] 1 Month [ ] 1-3 Months [ ] 3-6 Months [ ] Never
  (2) If no, please explain: Corona Disease / persistent rectal blood / disc hernianton

- e. If you do not expect patient to be able to return to his/her occupation or any other occupation, would you support his/her candidacy for Social Security Disability benefits?  [ ] Yes [ ] No

10. REHABILITATION
|  | PATIENTS JOB | ANY OTHER WORK |
|---|---|---|
- a. Is patient a suitable candidate for further rehabilitation services? (i.e., cardiopulmonary program, speech therapy, etc.)  [ ] Yes [x] No   [ ] Yes [ ] No
- b. Can present job be modified to allow for handling with impairment?  [ ] Yes [x] No   [ ] Yes [ ] No
- c. When could trial employment commence?  ___ mo. ___ day ___ yr.  [ ] Full-time [ ] Part-time   ___ mo. ___ day ___ yr. [x] Full-time [ ] Part-time
- d. Would vocational counseling and/or retraining be recommended?  [ ] Yes [x] No   [ ] Yes [ ] No

11. REMARKS: Multiple conditions prevent return to work.

Name of Attending Physician (Print)  Oleh Tyrtey

OLEH TERLECKYJ, M.D.
5145 N. CALIFORNIA AVE, SUITE 405
CHICAGO, IL 60625
TEL - 773-275-5926
FAX - 773-275-5053

Degree _____ Phone _____ Fax _____
Street Address _____ City or Town _____
State _____ Zip Code _____
Signature _____ Date 2/16/05



**Disability RMS**
*Committed to a higher standard*

## AUTHORIZATION FOR RELEASE OF INFORMATION (excluding psychotherapy notes)
### (HIPAA COMPLIANT)
### (to be signed and dated by the insured/claimant)

I authorize any licensed physician, any other medical practitioner or provider, pharmacist, hospital, clinic, other medical or medically related facility, federal, state or local government agency, insurance or reinsuring company, the Social Security Administration, consumer reporting agency or employer having information available as to diagnosis, treatment and prognosis with respect to any physical or mental condition and/or treatment of me, and any non-medical information about me (including any information, data or records regarding my Social Security, FICA earnings history, Worker's Compensation, State Disability, pension, credit, earnings and employment history) to give any and all such information to authorized representatives of Disability Reinsurance Management Services, Inc. (Disability RMS), and United States Life Insurance Company in the City of New York *excluding psychotherapy notes*, and including, but not limited to, any other mental or psychiatric records, medical, dental and hospital records (including psychiatric, alcohol, and drug abuse, and **HIV/AIDS*** information) which may have been acquired in the course of examination or treatment. I understand that the information obtained by use of this authorization will be used by Disability RMS, United States Life Insurance Company in the City of New York and the above-described representatives to evaluate and adjudicate my current disability claim, and may be re-disclosed to (a) any medical, investigative, financial or vocational specialist or entity, or (b) any other organization or person, employed by or representing Disability RMS or United States Life Insurance Company in the City of New York to assist with the evaluation and adjudication of my current disability claim and/or to report aggregate claims information to United States Life Insurance Company in the City of New York. I understand that information used or disclosed pursuant to this authorization may be subject to redisclosure by the recipient and may no longer be protected by HIPAA's Privacy rules, or any other federal or state law.

This authorization is valid during the pendency of my claim and shall expire on the date my claim finally ends. A photocopy of this authorization is as valid as the original. I understand that my authorized representative or I have the right to request and receive a copy of this authorization and the information to which it pertains.

I understand that I have the right to revoke this authorization by notifying Disability RMS in writing, of my revocation. However, such revocation is not effective to the extent that Disability RMS and/or United States Life Insurance Company in the City of New York have relied previously upon this authorization for the use or disclosure of my protected health information. In addition, I understand that my revocation of, or my failure to sign this authorization may impair Disability RMS' and United States Life Insurance Company in the City of New York's ability to evaluate my current disability claim and as a result may be a basis for denying that current disability claim for benefits.

***If you reside in California:** this authorization excludes the release of Human Immunodeficiency Virus (HIV) and Autoimmune Deficiency Disorder (AIDS) information and test results. Separate authorizations signed by the insured claimant, or employee-claimant (for self-insured business) as to each specific test.

****If you reside in Connecticut, Maine, or Massachusetts:** this authorization excludes the release of information about Human Immunodeficiency Virus (HIV) and Autoimmune Deficiency Disorder (AIDS). A separate authorization signed by the insured claimant, or employee-claimant (for self-insured business) as to each specific test.

*****If you reside in Vermont:** This authorization EXCLUDES the release of any information about previously administered HIV-related tests, including but not limited to tests for HIV antibodies, T-Cell counts, AIDS or ARC. The proposed insured is NOT AUTHORIZING Disability RMS to forward the results from any new test, requested by us, to any outside, non-affiliated company or entity not under specific contract with us to perform underwriting services, and Disability RMS shall comply, as applicable with the provisions of Title 8, Section 4724 (20) of the Vermont Statutes.

Claimant Name: Yousif Toma

Claimant Signature (or Authorized Representative) _____    Date: 2-16-05

Date of Birth: 01/07/1950
Description of Personal Representative's Authority [If applicable]:
[*If signed by authorized representative, attach verification of identity]

# Disability RMS

*Committed to a higher standard*

**07 C 6653**

Disability Reinsurance Management Services, Inc.

One Riverfront Plaza
Westbrook, ME 04092-9700
(877) 489-9784
Fax (866) 376-9480

February 16, 2005

Yousif Toma
4309 N. Wolcott
Chicago, IL  60613

)

**JUDGE DER-YEGHIAYAN
MAGISTRATE JUDGE NOLAN**

Dear Mr. Toma,

Disability RMS is the claims administrator for United States Life Insurance Company in the City of New York, the disability insurance carrier for Tempel Steel.

To effectively manage your long-term disability claim, we are in need of additional information.

In your Supplementary Statement received 2/16/05 you stated you were awarded Social Security Disability.  As we informed you in our approval letter of 8/12/2004 these benefits are offsets to your long term disability benefit.  Please forward a copy of your Social Security Disability Award Notice.  We require a copy of your award to recalculate benefits due to you.  No further benefits will be released until this information is received in order to reduce the expected overpayment made to you.

Your cooperation in providing the above information is greatly appreciated and will serve to expedite the handling of this claim.  If you should have any questions, please contact me at the number below.

Sincerely,


Leigh Adams
Senior Managed Disability Analyst
1-(877) 489-9784

cc:    Attorney Bryan Flangel
       Katz, Friedman, Eagle, Eisenstein and Johnson
       77 West Washington, 20th Floor
       Chicago, IL  60602

# Disability RMS 

*Committed to a higher standard*

**07 C 6653**

Disability Reinsurance Management Services, Inc.
One Riverfront Plaza
Westbrook, ME 04092-9700
(877) 489-9784
Fax (866) 376-9480

March 29, 2005

Yousif Toma
4309 N. Wolcott
Chicago, IL 60613

**JUDGE DER-YEGHIAYAN**
**MAGISTRATE JUDGE NOLAN**

Dear Mr. Toma,

Thank you for notifying us of your Social Security award.   Under the terms of the Long Term Disability Insurance Policy issued by The United States Life Insurance Company in the City of New York to your employer, Tempel Steel, Social Security benefits are an offset to your Long Term Disability benefits.

Due to your Social Security award and the retroactive benefits you received, an overpayment has been created in the amount of **$13,760.50**.  A copy of our calculation of your overpayment is attached. Typically, if you paid for an attorney/advocate to assist you during your application, the funds approved and paid to the advocate would reduce your total overpayment.  It appears from the records received you did not have an advocate.  If this is not accurate, please provide proof of your approved payment and we will reduce your overpayment accordingly.

You are required to fully reimburse the overpayment at this time. **Please forward your personal check or money order made payable to The United States Life Insurance Company in the City of New York for the full amount of the overpayment.**

**Once we have received full reimbursement, your benefits will be reinstated at $50.00 per month.**

If we do not receive full reimbursement of the overpayment within thirty (30) days of the date of this letter your file will be referred to our Collections Department.

If you should have any questions please contact me at the toll-free number below.

Sincerely,

Leigh Adams
Senior Managed Disability Analyst
(877) 489-9784

cc:   The United States Life Insurance Company in the City of New York

WE **DID PAY** AS FOLLOWS:

| | | |
|---|---|---|
| 4/25/04-2/25/05 LTD BENEFIT | at $1701.26 for 10 months = | $ 17012.60 |
| 4/25/04-6/15/04 STD BENEFIT | at $1701.26 for 1 mo 20 days= | - $ 2835.43 |

**Total paid:**

$14,260.50

### SHOULD HAVE PAID

| | | |
|---|---|---|
| 4/25/04-2/25/05 LTD BENEFIT | at $1701.26 for 10 months = | $17012.60 |
| 4/25/04-6/15/04 STD BENEFIT | at 1701.26 for 1 mo 20 days- | - $ 2835.43 |
| 4/25/04-2/25/05 SSDI OFFSET | at $1794.00 for 10 months = | - $17940.00 |

**\*\* ADJUSTMENT**

**Total should have paid**

+    4262.83

$500.00

**\*\* The adjustment added in because your total offsets reduced your monthly benefit to -0- and your plan has a $50.00 minimum benefit. Anytime your offsets exceed your gross LTD benefit payable, you are eligible to receive a $50 minimum monthly benefit.**

| | |
|---|---|
| DID PAY | $14260.50 |
| SHOULD HAVE PAID | $    500.00 |
| | $13,760.50 |
| LESS ATTORNEY'S FEES | 0 |
| **TOTAL OVERPAID** | **$13,760.50** |

# Disability RMS



*Committed to a higher standard*

**Disability Reinsurance Management Services, Inc.**
One Riverfront Plaza
Westbrook, ME 04092-9700
(877) 489-9784
Fax (866) 376-9480

April 29, 2005

Yousif Toma
4309 N. Wolcott
Chicago, IL 60613

Dear Mr. Toma,

On 3/29/05, we wrote to you requesting full reimbursement of an overpayment due to your Social Security award. Under the terms of your benefit plan you are required to repay any and all overpayments. As of this date, we have not received your payment in the amount of $13,760.50 or a response from you.

In order to avoid legal action please provide your personal check or money order payable to The United States Life Insurance Company in the City of New York in the amount of $13,760.50 within fourteen (14) days of the date of this letter. In the event you are unable to make a full reimbursement of the overpayment, please contact me to discuss repayment options.

Your cooperation is greatly appreciated and will serve to expedite the handling of this claim and we look forward to your immediate response.

Sincerely,

Leigh Adams
Senior Managed Disability Analyst
(877) 489-9784



# Disability RMS

*Committed to a higher standard*

**Disability Reinsurance Management Services, Inc.**
One Riverfront Plaza
Westbrook, ME 04092-9700
(877) 489-9784
Fax (866) 376-9480

August 21, 2005

Yousif Toma
4309 N. Wolcott
Chicago, IL  60613

Dear Mr. Toma,

Disability RMS is the claims administrator for The United States Life Insurance Company in the City of New York, the disability insurance carrier for Tempel Steel.

As you know, your claim is overpaid 13,760.50. We have applied the minimum monthly benefit of $50.00 from 2/25/05 -8/25/05. Your remaining overpayment is: $13,460.50. Because we have not heard back from you regarding your repayment intentions, we have referred your claim to our legal department to assist with the recovery of the substantial overpayment.

Your cooperation in providing the above information is greatly appreciated and will serve to expedite the handling of this claim.  If you should have any questions, please contact me at the number below.

Sincerely,

Leigh Adams
Senior Managed Disability Analyst
(877) 489-9784

cc:     The United States Life Insurance Company in the City of New York
        Robert Wagner

# Disability RMS

Disability Reinsurance Management Services, Inc.

One Riverfront Plaza
Westbrook, ME 04092-9700

(207) 591-3000
Fax (207) 591-3048

September 23, 2005

Bryan Flangel, Esq.
77 West Washington
20th Floor
Chicago, IL 60602

## Re: Yousif Toma – Overpayment of Long Term Disability Benefits

Dear Mr. Flangel:

Thank you for taking the time to talk with me today with regard to your client, Yousif Toma. As discussed, Mr. Toma has been overpaid long term disability benefits as a result of his receipt of social security disability benefits, an offset to his disability benefits paid by US Life Insurance Company.

Disability benefits were paid to Mr. Toma from April 25, 2004 until February 25, 2005 without an offset for social security disability benefits.

Enclosed, please find three letters that were sent to Mr. Toma with regard to the overpayment and include the breakdown and calculations of the overpaid balance. Mr. Toma continues to receive disability benefits in the amount of fifty dollars per month, and those benefits are being applied to his overpaid balance. At this time, Mr. Toma's outstanding overpaid balance is $13,460.50.

Please have Mr. Toma send a check made payable to United States Life Insurance Company in the amount of $13,460.50 to my attention at the following address:
Disability RMS
One Riverfront Plaza
Westbrook, Maine  04092-9700

Please call me with any questions. My direct phone number is 207-591-3219.

Regards,

Donna L. Karkos
Senior Paralegal
Office of the General Counsel

Encl.

*Committed To A Higher Standard*

# Disability RMS ◆

**Disability Reinsurance Management Services, Inc.**

One Riverfront Plaza
Westbrook, ME 04092-9700

(207) 591-3000
Fax (207) 591-3048

January 25, 2006

Bryan Flangel, Esquire
77 West Washington
20th Floor
Chicago, IL 60602

RE: Yousif Toma – Overpayment of Long Term Disability Benefits

Dear Mr. Flangel:

I am following up on our letter sent to you on September, 23, 2005. I have attached a copy of that letter with enclosures. To date, we have not heard back from you. Please contact me as soon as possible at 207-592-3219 so that we may resolve this matter. Thank you.

Regards,

Donna L. Karkos
Senior Paralegal
Office of the General Counsel

*Committed To A Higher Standard*

# Disability RMS 

**Disability Reinsurance Management Services, Inc.**

One Riverfront Plaza
Westbrook, ME 04092-9700

(207) 591-3000
Fax (207) 591-3048



September 23, 2005

Bryan Flangel, Esq.
77 West Washington
20th Floor
Chicago, IL 60602

**Re: Yousif Toma – Overpayment of Long Term Disability Benefits**

Dear Mr. Flangel:

Thank you for taking the time to talk with me today with regard to your client, Yousif Toma. As discussed, Mr. Toma has been overpaid long term disability benefits as a result of his receipt of social security disability benefits, an offset to his disability benefits paid by US Life Insurance Company.

Disability benefits were paid to Mr. Toma from April 25, 2004 until February 25, 2005 without an offset for social security disability benefits.

Enclosed, please find three letters that were sent to Mr. Toma with regard to the overpayment and include the breakdown and calculations of the overpaid balance. Mr. Toma continues to receive disability benefits in the amount of fifty dollars per month, and those benefits are being applied to his overpaid balance. At this time, Mr. Toma's outstanding overpaid balance is $13,460.50.

Please have Mr. Toma send a check made payable to United States Life Insurance Company in the amount of $13,460.50 to my attention at the following address:
Disability RMS
One Riverfront Plaza
Westbrook, Maine 04092-9700

Please call me with any questions. My direct phone number is 207-591-3219.

Regards,

Donna L. Karkos
Senior Paralegal
Office of the General Counsel

Encl.

*Committed To A Higher Standard*

# Disability RMS

*Committed to a higher standard*

**Disability Reinsurance Management Services, Inc.**

One Riverfront Plaza
Westbrook, ME 04092-9700
(877) 489-9784
Fax (866) 376-9480

August 21, 2005

Yousif Toma
4309 N. Wolcott
Chicago, IL 60613

Dear Mr. Toma,

Disability RMS is the claims administrator for The United States Life Insurance Company in the City of New York, the disability insurance carrier for Tempel Steel.

As you know, your claim is overpaid 13,760.50. We have applied the minimum monthly benefit of $50.00 from 2/25/05 -8/25/05. Your remaining overpayment is: $13,460.50. Because we have not heard back from you regarding your repayment intentions, we have referred your claim to our legal department to assist with the recovery of the substantial overpayment.

Your cooperation in providing the above information is greatly appreciated and will serve to expedite the handling of this claim. If you should have any questions, please contact me at the number below.

Sincerely,

Leigh Adams
Senior Managed Disability Analyst
(877) 489-9784

cc:    The United States Life Insurance Company in the City of New York
       Robert Wagner

# Disability RMS



*Committed to a higher standard*

**Disability Reinsurance Management Services, Inc.**
One Riverfront Plaza
Westbrook, ME 04092-9700
(877) 489-9784
Fax (866) 376-9480

April 29, 2005

Yousif Toma
4309 N. Wolcott
Chicago, IL 60613

Dear Mr. Toma,

On 3/29/05, we wrote to you requesting full reimbursement of an overpayment due to your Social Security award. Under the terms of your benefit plan you are required to repay any and all overpayments. As of this date, we have not received your payment in the amount of $13,760.50 or a response from you.

In order to avoid legal action please provide your personal check or money order payable to The United States Life Insurance Company in the City of New York in the amount of $13,760.50 within fourteen (14) days of the date of this letter. In the event you are unable to make a full reimbursement of the overpayment, please contact me to discuss repayment options.

Your cooperation is greatly appreciated and will serve to expedite the handling of this claim and we look forward to your immediate response.

Sincerely,

Leigh Adams
Senior Managed Disability Analyst
(877) 489-9784

# Disability RMS



*Committed to a higher standard*

**Disability Reinsurance Management Services, Inc.**

One Riverfront Plaza
Westbrook, ME 04092-9700
(877) 489-9784
Fax (866) 376-9480

March 29, 2005

Yousif Toma
4309 N. Wolcott
Chicago, IL 60613

Dear Mr. Toma,

Thank you for notifying us of your Social Security award.   Under the terms of the Long Term Disability Insurance Policy issued by The United States Life Insurance Company in the City of New York to your employer, Tempel Steel, Social Security benefits are an offset to your Long Term Disability benefits.

Due to your Social Security award and the retroactive benefits you received, an overpayment has been created in the amount of **$13,760.50**.  A copy of our calculation of your overpayment is attached. Typically, if you paid for an attorney/advocate to assist you during your application, the funds approved and paid to the advocate would reduce your total overpayment.  It appears from the records received you did not have an advocate.  If this is not accurate, please provide proof of your approved payment and we will reduce your overpayment accordingly.

You are required to fully reimburse the overpayment at this time. **Please forward your personal check or money order made payable to The United States Life Insurance Company in the City of New York for the full amount of the overpayment.**

**Once we have received full reimbursement, your benefits will be reinstated at $50.00 per month.**

If we do not receive full reimbursement of the overpayment within thirty (30) days of the date of this letter your file will be referred to our Collections Department.

If you should have any questions please contact me at the toll-free number below.

Sincerely,


Leigh Adams
Senior Managed Disability Analyst
(877) 489-9784

cc:     The United States Life Insurance Company in the City of New York

WE **DID PAY** AS FOLLOWS:

| | | |
|---|---|---|
| 4/25/04-2/25/05 LTD BENEFIT | at $1701.26 for 10  months = | $ 17012.60 |
| 4/25/04-6/15/04 STD BENEFIT | at $1701.26 for 1 mo 20 days= | - $  2835.43 |

**Total paid:**  $14,260.50

**SHOULD HAVE PAID**

| | | |
|---|---|---|
| 4/25/04-2/25/05 LTD BENEFIT | at $1701.26 for 10 months = | $17012.60 |
| 4/25/04-6/15/04 STD BENEFIT | at 1701.26 for 1 mo 20 days- | - $ 2835.43 |
| 4/25/04-2/25/05 SSDI OFFSET | at $1794.00 for 10 months  = | - $17940.00 |
| ** ADJUSTMENT | | +    4262.83 |
| Total should have paid | | $500.00 |

** The adjustment added in because your total offsets reduced your monthly benefit to -0- and your plan has a $50.00 minimum benefit. Anytime your offsets exceed your gross LTD benefit payable, you are eligible to receive a $50 minimum monthly benefit.

| | |
|---|---|
| DID PAY | $14260.50 |
| SHOULD HAVE PAID | $   500.00 |
| | $13,760.50 |
| LESS ATTORNEY'S FEES |    0 |
| **TOTAL OVERPAID** | $13,760.50 |