# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

|  |  |  |
|---|---|---|
| THE UNITED STATES LIFE INSURANCE COMPANY IN THE CITY OF NEW YORK, | ) ) ) ) | No. 07 C 6653 |
| Plaintiff, | ) ) | Judge Der-Yeghiayan |
| v. | ) ) | Magistrate Judge Nolan |
| YOUSIF TOMA, | ) ) |  |
| Defendant. | ) |  |

### AFFIDAVIT OF ELIZABETH PELLETIER

I, Elizabeth Pelletier, being first duly sworn, upon oath, state that I am over the age of twenty-one (21) and I can truthfully and competently testify to the following facts:

1.      I am employed by Disability Reinsurance Management Services, Inc. ("Disability RMS") as a Senior Managed Disability Analyst.  I have personal knowledge of the facts stated herein, which I verify to be true and correct.

2.      Disability RMS is the claims administrator for The United States Life Insurance Company in the City of New York ("U.S. Life").  Disability RMS administers disability claims submitted by employees covered by Group Policy No G-232,112 ("Plan"), including, the claim submitted by the defendant, Yousif Toma. ("Toma").  As a Senior Managed Disability Analyst with Disability RMS, my responsibilities include the determination of the monthly benefits payable to participants and beneficiaries of the Plan, including Toma.  (A true and correct copy of the Plan is attached hereto as Exhibit 1).

3.      Toma submitted a claim for long-term disability benefits under the Plan in July 2004.

1

4.     During the period from April 25, 2004 through February 25, 2005, U.S. Life paid Toma long-term disability benefits in the total amount of $17,012.60.

5.     The Plan provides that an insured member's long term disability benefit is reduced on account of other income benefits, which includes amounts an insured receives under the Federal Social Security Act. (Exhibit 1, Group Policy, p. G-19001 LTDB-3).

6.     On or about February 16, 2005, U.S. Life, through Disability RMS, received Toma's Supplementary Proof of Loss Long Term Disability–Claimant's Statement, on which Toma indicated that he was approved to receive Social Security Disability Benefits. (A true and correct copy of Toma's Supplementary Proof of Loss Long Term Disability-Claimant's Statement dated February 16, 2005 is attached as Exhibit 2).

7.     On February 16, 2005, U.S. Life through, Disability RMS, informed Toma that receipt of Social Security Disability Benefits reduces the amount of his long-term disability benefit payable under the Plan.

8.     Disability RMS determined that Toma received Social Security Disability Benefits from the Social Security Administration commencing in April of 2004 in the monthly amount of $1,794.90. Furthermore, beginning in December of 2004, Toma's Social Security Disability Benefit was increased to $1,843.30. (See Exhibit 3, database printout evidencing the award and amount of Social Security Disability Benefits.).

9.     During the ten month period from April 2004 to February 2005, Toma received $17,012.60 in long-term disability benefits from U.S. Life under the Plan. During the same ten month period, Toma also received Social Security Disability Benefits in the total amount of $18,094.20.

2

10.    Because Toma received Social Security Benefits greater than his long-term disability benefits, he was entitled to receive only the minimum $50 monthly disability benefit under the Plan, totaling $500.  As a result, Toma's long term disability claim was overpaid in the amount of $16,512.60.   The following chart illustrates the overpaid benefits received by Toma from U.S. Life:

| Month | Disability Benefits Paid to Toma by U.S. Life | Social Security Benefits Received | Minimum Benefit Payable |
|---|---|---|---|
| April 2004 | $1,701.26 | $1,794.90 | $50.00 |
| May 2004 | $1,701.26 | $1,794.90 | $50.00 |
| June 2004 | $1,701.26 | $1,794.90 | $50.00 |
| July 2004 | $1,701.26 | $1,794.90 | $50.00 |
| Aug. 2004 | $1,701.26 | $1,794.90 | $50.00 |
| Sept. 2004 | $1,701.26 | $1,794.90 | $50.00 |
| Oct. 2004 | $1,701.26 | $1,794.90 | $50.00 |
| Dec. 2004 | $1,701.26 | $1,843.30 | $50.00 |
| Jan. 2005 | $1,701.26 | $1,843.30 | $50.00 |
| Feb. 2005 | $1,701.26 | $1,843.30 | $50.00 |
| **Totals** | **$17,012.60** | **$18,094.20** | **$500.00** |

```
    $17,012.60    (disability payments paid to Toma by U.S. Life)
 -  $    500.00    (benefits due to Toma)
    $16,512.60    (amount of overpaid benefits)
```

11.    At the time U.S. Life learned Toma was receiving Social Security Disability Benefits, Toma had received 10 long-term disability benefit payments from U.S. Life.  Pursuant to the Plan, Toma was entitled to receive an additional 14 months of long-term disability payments in the monthly minimum amount of $50.00.   Because Toma was already indebted to U.S. Life as a result of the overpayments, the remaining 14 months of long-term disability payments, totaling $700.00, were applied to reduce Toma's indebtedness to U.S. Life from $16,512.60 to $15,812.60.

```
    Overpayment amount:                              $16,512.60
    Remaining Total of Disability Benefits:_____  -  $    700.00
                                                     $15,812.60
```

3

In addition, Toma received Short Term Disability Benefits from his employer in the amount of $2,835.43. Toma's receipt of overpayment, $15,812.60 was further reduced by $2,835.43, the amount of the Short Term Disability Benefits he received, resulting in Toma's receipt of total overpayments in the amount of $12,977.17.

12. As a result of Toma's receipt of Social Security Benefits and after reconciliation of all amounts due and all amounts paid, Toma received long-term disability benefit overpayments in the amount of $12,977.17.

13. Toma remains indebted to U.S. Life in the amount of $12,977.17, plus interest thereon, since April 25, 2004.

14. Attached to my affidavit are true and correct copies of documents referred to herein, which are maintained in the files of Disability RMS, as claims administered for U.S. Life, in the ordinary course of its business.

Elizabeth Pelletier

SUBSCRIBED and SWORN to before me
this _1st_ day of May 2008.

Notary Public

Bonnie R. Guerrette, Notary Public
State of Maine
My Commission Expires 6/4/2011

4

# EXHIBIT 1
# To Affidavit

**THE UNITED STATES LIFE** Insurance Company In the City of New York

*(Called United States Life)*

125 Maiden Lane
New York, New York  10038

## CERTIFICATE OF INSURANCE

United States Life certifies that certain eligible persons are insured for the benefits described in this certificate.  This insurance is subject to the eligibility and effective date requirements described on pages E of this certificate.

## IMPORTANT NOTICE

This certificate is a summary of the group policy provisions which affect **your** insurance.  It is merely evidence of the insurance provided by such policy for TEMPEL STEEL COMPANY (the Policyholder).

The group policy is a contract between United States Life and the Policyholder.  It may be changed or ended without notice to or consent of any insured person.

This certificate replaces any certificate previously issued by United States Life to you under the group policy.

The benefits described in this certificate are provided by group policy no. G-232,112

G-19001
FP

G-232,112

## CERTIFICATE INDEX

Each page in this certificate has a 2 line code at the bottom left of the page. Tne code "G-19001" means that the page belongs to the certificate series. The letter or letters below the certificate code represents a phonetic description of the particular section (FP = Face page; E = Eligibility). If a section requires more than one page, the descriptive letter is followed by a number indicating its order in the section (E-2 is the second page in the Employee Eligibility section).

This index refers you to the phonetic codes.

**SECTION**                                                                              **PAGE(S)**

Face Page ................................................................................................................. FP

Schedule of Benefits.................................................................................................. SCH

Definitions ................................................................................................................. DEF

Employee Eligibility
  Eligible Classes Of Employees.................................................................................. E-1
  Date Employees Are Eligible For Insurance.............................................................. E-1
  Date Employees' Insurance Takes Effect .................................................................. E-2
  Actively At Work Requirement.................................................................................... E-2
  Date Employees' Insurance Ends ............................................................................. E-2
  Continuation of Insurance With Premium Payment ................................................... E-3

Long Term Disability Benefits...................................................................................... LTDB

Pregnancy Benefits .................................................................................................... P

End Of Insurance Provided By The Group Policy ......................................................... END

General Provisions
  Incontestability.......................................................................................................... GP
  Misstatements .......................................................................................................... GP
  Payment For Expenses Incurred At Your Death ....................................................... GP
  Payment To A Minor Or Incompetent ....................................................................... GP
  Autopsy..................................................................................................................... GP
  Assignment............................................................................................................... GP
  Compliance With Law................................................................................................ GP
  Gender....................................................................................................................... GP

General Provisions For Accident And Health Insurance
  Filing A Claim ........................................................................................................... GPAH
  Payment of Claims ................................................................................................... GPAH
  Physical Exams ........................................................................................................ GPAH
  Time Limit On Legal Actions...................................................................................... GPAH

Consumer Complaint Notice......................................................................................... CCN

**DEFINITIONS**

ACTIVE WORK or ACTIVELY AT WORK means that you perform each duty of your job for full pay.  This must be done at the Policyholder's place of business or any place to which such business requires you to travel.

FULL-TIME means active work on the Policyholder's regular work schedule for the class of employees to which you belong. The work schedule must be at least 30 hours a week.

PHYSICIAN means:

- a medical practitioner licensed to provide medical services and perform general surgery, or
- any other practitioner whose services, by law of the state where such services are performed, must be covered by the group policy.

Each such person must be licensed in the state where he performs the service and must act within the scope of that license. He must also be certified and/or registered if required by such state.

HOSPITAL means a licensed institution which is approved by the Joint Commission on Accreditation of Hospitals. "Hospital" does not mean a place, or part of one, which is used mainly for:

- the aged
- the chronically ill
- convalescents
- drug addicts
- alcoholics
- a rest home
- a nursing home
- custodial, educational or rehabilitory care.

WAITING PERIOD means a period of consecutive days of disability for which no benefit is payable.  The duration of the waiting period is shown in the Schedule of Benefits.  The waiting period begins on the first day of disability occurring after the effective date of your insurance.

**SCHEDULE OF BENEFITS**

**EMPLOYEE BENEFITS**

### LONG TERM DISABILITY BENEFITS

| | |
|---|---|
| Waiting period during disability | 180 days |
| Benefit per month of disability: | |
| • maximum total disability benefit for total disability | 50% of your basic monthly pay, up to $6,000 |
| • maximum progressive partial disability benefit for partial disability | the monthly benefit that would be payable to you during total disability LESS the wages you earn while partially disabled |
| • minimum for each disability | $50 |
| Maximum benefit period for each injury or sickness: | |
| • if total disability begins prior to age 66 | 2 years |

if total disability begins at attained age:

| | |
|---|---|
| 66 | 21 months |
| 67 | 18 months |
| 68 | 15 months |
| 69 and over | 12 months |

| | |
|---|---|
| • for partial disability | until the earliest of: |
| | • the end of the maximum benefit period described above for total disability, or |
| | • the date you earn 85% or more of your basic monthly pay |
| Final survivor benefit payable at employee's death | an amount equal to 3 times the last monthly benefit* paid to you |

*The amount of the last monthly benefit will not reflect a reduction made for wages earned while partially disabled.

**Change In Amount Of Your Insurance**

A change in your status may result in a change in your amount of insurance.

**For a decrease**

If insurance is to end or decrease, such change will take effect on the date of change.

**For an increase**

You must be actively at work in an eligible class on the date an increase in your insurance is to take effect. If you are not, such increase will take effect on the day you resume such work.

The date the increase is to take effect might not be a scheduled workday. If so, you will be considered actively at work on such date if you were actively at work on your last scheduled workday.

G-19001
SCH

# EMPLOYEE ELIGIBILITY

## ELIGIBLE CLASSES OF EMPLOYEES

All full-time hourly employees of the Policyholder, but not those who are temporary, part-time or seasonal.

## DATE EMPLOYEES ARE ELIGIBLE FOR INSURANCE

Each employee in an eligible class on January 1, 2002 will be eligible for insurance on the later of:

- that day, or
- the first day after he completes 90 days of full-time work in an eligible class.

Each employee who enters an eligible class after January 1, 2002 will be eligible for insurance on the first day after he completes 90 days of full-time work in such class.

### Rehired employees

The Policyholder may choose to have insurance for former employees take effect on the date they re-enter an eligible class. This choice may apply to all or some classes of employees. Such former employees must be rehired within 6 months after their insurance ended. The Policyholder must notify United States Life of this choice in writing. If this choice is made, it will apply to all rehired employees in the same class. If it is not made, rehired employees must complete the waiting period(s) shown above.

G-19001
E-1

G-232,112

**EMPLOYEE ELIGIBILITY (Continued)**

**DATE EMPLOYEES' INSURANCE TAKES EFFECT**

Your insurance will take effect on the date you are eligible.

**ACTIVELY AT WORK REQUIREMENT**

You must be actively at work in an eligible class on the date your insurance is to take effect. If you are not, such insurance will take effect on the day you resume such work.

The date insurance is to take effect might not be a scheduled workday. If so, you will be considered actively at work on such date if you were actively at work on your last scheduled workday.

**DATE EMPLOYEES' INSURANCE ENDS**

Your insurance will end at the earliest of:

1. the date the group policy ends;

2. the date insurance ends for your class;

3. the end of the period for which the last premium has been paid for you; or

4. the date employment ends; except as stated in the CONTINUATION OF INSURANCE WITH PREMIUM PAYMENT provision, ceasing full-time work in an eligible class will be considered the end of employment.

**EMPLOYEE ELIGIBILITY (Continued)**

**CONTINUATION OF INSURANCE WITH PREMIUM PAYMENT**

The Policyholder may choose to continue your insurance by paying premiums for you if you cease full-time work due to:

- disability
- layoff
- part-time work
- leave of absence, or
- strike.

He may do so only for the limited period stated in the group policy.

If you cease full-time work, contact the Policyholder right away for details on continuation of your insurance, if any.

**LONG TERM DISABILITY BENEFITS**

If, while insured, you become disabled and continue to be so disabled past the waiting period, United States Life will pay to you the benefits described below.

The waiting period is shown in the Schedule of Benefits.

**DEFINITIONS**

TOTAL DISABILITY means:

- during the waiting period and next 24 months, your complete inability to perform the material duties of your regular job; "your regular job" is that which you were performing on the day before total disability began

- after such 24 months, your complete inability to perform the material duties of any gainful job for which you are reasonably fit by training, education or experience.

The total disability must be a result of an injury or sickness. To be considered totally disabled, you must also be under the regular care of a physician.

PARTIAL DISABILITY means that you are not able to perform the material duties of your regular job, but you are able to perform:

- at least one of these duties on a part-time basis, or
- at least one, but not all, of these duties on a full-time basis.

"Your regular job" is that which you were performing on the day before disability began.

The partial disability must be a result of an injury or sickness.

DISABILITY means total and/or partial disability.

BASIC MONTHLY PAY means your monthly rate of pay from the Policyholder. Such rate will be that in effect on the day before disability begins. "Basic monthly pay" includes commissions, but not bonuses, overtime pay or other extra compensation. Commissions will be averaged for the lesser of:

- the 24 month period of employment before the date disability begins, or
- the period of employment.

**TOTAL DISABILITY BENEFIT**

The total disability benefit will begin to accrue on the day after the waiting period ends.

The total disability benefit will be paid monthly in the amount shown in the Schedule of Benefits, reduced by other income benefits as described on page LTDB-3.

Limited benefits will be paid for disability due to:

- alcoholism, drug addiction and mental, nervous or emotional disorders; and
- pre-existing conditions.

These benefits are described on page LTDB-2.

**PROGRESSIVE PARTIAL DISABILITY BENEFIT**

The progressive partial disability benefit will begin to accrue on the day after the waiting period ends. During the waiting period, you may be either totally disabled, partially disabled or a combination of both. You do not have to be totally disabled before receiving a progressive partial disability benefit.

The progressive partial disability benefit will be paid monthly in the amount shown in the Schedule of Benefits.

Limited benefits will be paid for disability due to:

- alcoholism, drug addiction and mental, nervous or emotional disorders; and
- pre-existing conditions.

These benefits are described on page LTDB-2.

**BENEFITS FOR PART OF A MONTH**

To determine the benefit to be paid for a period of less than a full month:

- divide the benefit by 30
- multiply the result by the number of days in such period.

**LONG TERM DISABILITY BENEFITS (Continued)**

**DURATION OF BENEFITS**

Monthly benefits will be paid up to the maximum benefit periods shown in the Schedule of Benefits.

The benefit will end on the date:

1.  you fail to give required proof of continuing disability or verification of earnings, as needed;
2.  your disability ends;
3.  the maximum benefit period ends; or
4.  you die.

If the group policy ends, this will not act to end the maximum benefit period.

**PREGNANCY BENEFITS**

No pregnancy benefits will be paid by this section, except as described on page P.

**LIMITED MONTHLY BENEFITS TO BE PAID FOR ALCOHOLISM, DRUG ADDICTION AND MENTAL, NERVOUS OR EMOTIONAL DISORDERS**

If disability is due to alcoholism, drug addiction or a mental, nervous or emotional disorder, or any combination of these, a maximum of 24 monthly benefits will be paid while such disability continues.  Benefits may be paid beyond this 24 month period, as follows:

**If you are confined in a hospital on the last day of the month for which the 24th monthly benefit is to be paid**

Benefits will continue to be paid until you are discharged.

If you are still disabled when discharged, benefits will continue to be paid for the period disability continues, up to 90 days. If you are reconfined during this 90 day period for 14 or more consecutive days, benefits will continue to be paid during such second confinement.  When discharged, benefits will continue to be paid for the period disability continues, up to a final period of 90 days.

**If a hospital confinement begins after 24 monthly benefits have been paid**

Benefits will be paid for the period of confinement if:

*   disability continued from the end of the waiting period to the date of confinement, and
*   the confinement is for 14 or more consecutive days.

**Note:  No benefits will be paid for alcoholism, drug addiction and mental, nervous or emotional disorders beyond the maximum benefit period shown in the Schedule of Benefits.**

**LIMITED MONTHLY BENEFITS TO BE PAID FOR PRE-EXISTING CONDITIONS**

PRE-EXISTING CONDITION means an injury or sickness for which you:

*   incurred charges
*   received medical treatment
*   consulted a physician, or
*   took prescribed drugs

within 3 months before you became insured by this section.

If disability is due to a pre-existing condition and it begins within 12 months of the date you become insured by this section, no benefits will be paid **unless you have not:**

*   incurred charges
*   received medical treatment
*   consulted a physician, or
*   taken prescribed drugs

for such condition, or any complication of it, for 6 continuous months, while insured.

If disability is due to a pre-existing condition and it begins more than 12 months after the date you become insured by this section, benefits will be paid as they accrue.

**LONG TERM DISABILITY BENEFITS (Continued)**

## SURVIVOR BENEFIT TO BE PAID IF YOU DIE

If you die while disabled, United States Life will pay to the eligible survivor the final survivor benefit shown in the Schedule of Benefits **if:**

- such disability had continued for 180 or more consecutive days, and
- you were receiving benefits for such disability.

**ELIGIBLE SURVIVOR** means your lawful spouse if living on the date a benefit payment is due.  If the spouse is not living, the term means your dependent children.

## SUCCESSIVE PERIODS OF DISABILITY

Successive periods of disability will be considered one period of disability unless they are:

- due to unrelated causes, or
- separated by a return to full-time work for 6 or more continuous months.

A separate waiting period will apply for each separate period of disability.

If you receive long term disability benefits from another group plan which replaces this section, this provision will not apply to you.

## REDUCTION ON ACCOUNT OF OTHER INCOME BENEFITS

Other income benefits are those listed below which are provided to you.

Benefits provided to your dependents by reason of your disability or retirement will be considered to be provided to you.

If you are age 65 or over and are eligible for retirement benefits, you will be presumed to receive all such benefits for which you are eligible.

Each monthly benefit will be reduced by the sum of any income you receive that month from:

- an employer or self-employment
- an employer retirement plan, if such plan is elected by the employee
- the retirement system of any government agency
- the Federal Social Security Act, the Railroad Retirement Act, the Canada Pension Plan or the Quebec Pension Plan*
- an employer benefit plan providing disability income benefits, if such benefits do not reduce the employee's life insurance amount or if such plan is elected by the employee
- the Veterans Administration or any other government agency
- a workers' compensation or similar law.

*Unless you notify United States Life to the contrary, it will be assumed that the maximum family benefit is paid to you under these Acts or Plans.

G-19001
LTDB-3

F/S

**LONG TERM DISABILITY BENEFIT (Continued)**

**REDUCTION ON ACCOUNT OF OTHER INCOME BENEFITS (Continued)**

**Limited reduction - the "100% all sources" formula for partial disability**

**If:**
the monthly benefit to be paid under this section, before reduction, plus your part-time earnings and the other income benefits listed above, equals 100% or less of your basic monthly pay

**Then:**
no reduction will be made under this section.

**If:**
the monthly benefit to be paid under this section, before reduction, plus your part-time earnings and the other income benefits listed above, exceeds 100% of your basic monthly pay

**Then:**
a reduction will be made, but will be limited to the amount by which the total income benefit exceeds such 100%.

**Income increases**

An increase in income received from an employer or self-employment after the first month that benefits are paid for a period of disability will be used to determine the monthly benefit reduction. Such an increase in the remaining other income benefits will **not** be used to determine the monthly benefit reduction.

**Lump sum payments under other plans**

Other income benefits listed above may be paid in a lump sum. If so, United States Life will pro rate the sum over the period that would have applied had the payment not been made in a lump sum. If no period had been set, the lump sum will be pro rated on a monthly basis over your life expectancy, as determined by United States Life.

**CONTINUATION OF INSURANCE WITHOUT PREMIUM PAYMENT**

No premium is due for you while you are receiving monthly benefits. When you stop receiving monthly benefits, premiums must again be paid when due.

**EXCLUSIONS**

No monthly benefit will be paid for disability due to:

- intentionally self-inflicted injury
- a war or an act of war, or
- committing a crime or an attempt to do so.

**PREGNANCY BENEFITS**

**FOR COMPLICATIONS OF PREGNANCY**

The benefits to be paid by any section of the group policy for a complication of pregnancy will be the same as those to be paid for a sickness.

COMPLICATIONS OF PREGNANCY means:

- conditions distinct from pregnancy, but caused or affected by it, which require hospitalization, provided the pregnancy does not terminate during such hospitalization

- non-elective caesarean section
- a terminated ectopic pregnancy, or
- spontaneous termination of pregnancy which occurs when a viable birth is not possible.

**FOR PREGNANCY PAID AS-ANY-OTHER-SICKNESS**

As used in the group policy for the benefits shown below, the term "sickness" includes:

- pregnancy
- childbirth
- abortion
- complications of any abortion, and
- related medical conditions

all referred to as "pregnancy."

**For long term disability benefits**

The benefits to be paid by the group policy for disability due to pregnancy will be the same as those to be paid for disability due to sickness.

**END OF INSURANCE PROVIDED BY THE GROUP POLICY**

**IF PREMIUM IS NOT PAID - GRACE PERIOD**

Each premium, after the first, may be paid up to 31 days after its due date.  This period is the grace period.  The insurance provided by the group policy will stay in effect during this period.  If the premium is not paid by the end of this period, such insurance will end at that time.

United States Life may extend the grace period by written notice.  Such notice will state the date insurance will end if the premium remains unpaid.

Premiums must be paid for a grace period and any extension of such period.

G-19001
END

**GENERAL PROVISIONS**

**MISSTATEMENTS**

A person's age, sex or any other data may be misstated. If so, the correct data will be used to determine if insurance is in force. If insurance is in force, the premium and/or benefits will be adjusted according to the facts.

**PAYMENT TO A MINOR OR INCOMPETENT**

If any beneficiary or payee is a minor or is incompetent to receive payment, United States Life will pay his guardian. United States Life will not be liable for such payment after it is made.

**ASSIGNMENT**

United States Life will not be bound by any assignment unless it is in writing and is recorded at its home office. United States Life is not responsible for the validity of an assignment.

**COMPLIANCE WITH LAW**

On the date the group policy takes effect, some of its provisions may conflict with an applicable law. If so, any such provision is changed to comply with the minimums required by such law.

**GENDER**

Male pronouns will be read as female where it applies.

# GENERAL PROVISIONS FOR ACCIDENT AND HEALTH INSURANCE

## FILING A CLAIM

To file a claim, a person must complete a proof of claim form.

Your employer may have these forms.  If so, get the form, complete it and send it as explained in **Steps 3 and 4** below.

If your employer does not have these forms, follow these steps:

## Step 1:

A claimant should send a written notice of claim to United States Life within 20 days of a loss.  No special form is required to do this.  The notice need only identify the claimant and the Policyholder.

## Step 2:

When United States Life receives the notice, it will send a proof of claim form to the claimant.

## Step 3:

The claimant should receive the proof of claim form within 15 days of the date United States Life received the notice of claim.

If the form is received within such time, it should be completed, as instructed, by all persons required to do so.  Additional proof, if required, should be attached to the form.

If the form is not received within such time, the claimant may provide written proof of claim to United States Life on any reasonable form.  Such proof must state the date the injury or sickness began and the nature and extent of the loss.

## Step 4:

Proof of claim must be sent to United States Life within 30 days after the waiting period (see Schedule of Benefits).  United States Life may require more proof as often as needed to verify disability.

If a notice or proof is sent later than the times shown above, United States Life will not deny or reduce a claim if the notice or proof was sent as soon as possible.

## PAYMENT OF CLAIMS

All benefits will be paid as they accrue.

## PHYSICAL EXAMS

United States Life, at its expense, has the right to examine the insured.  This may be done as often as needed to process a claim.

## TIME LIMIT ON LEGAL ACTIONS

Legal action may only be brought against United States Life during a certain period.  This period begins 60 days after the date proof of claim was filed and ends 3 years after the end of the period within which such proof is required.

**THE UNITED STATES LIFE** Insurance Company In the City of New York

*(Called United States Life)*

3600 Route 66
Neptune, NJ 07754
(732) 922-7000        NAIC No.: 70106

**CONSUMER COMPLAINT NOTICE**

**This notice is to advise you that should any complaints arise regarding this insurance, please contact your agent. If you have additional questions you may contact United States Life at the address and telephone number shown above.**

**If you have been unable to contact or obtain satisfaction from United States Life or the agent, you may contact the Illinois Department of Insurance at:**

**Illinois Department of Insurance
Consumer Division
Springfield, Illinois 62767**

**Written correspondence is preferable so that a record of your inquiry is maintained. When contacting your agent, United States Life or the Department of Insurance, have your policy number available.**

# EXHIBIT 2
# To Affidavit

**Disability RMS**
*Committed to a higher standard*

Case 1:07-cv-06653    Document 15-2    Filed 05/01/2008    Page 28 of 34

Please return completed form to:
Disability/Reinsurance Management Services, Inc.
One Riverfront Plaza
Westbrook, ME 04092-9700
Phone: (877) 489-9784
Fax: (866) 376-9480



**Please return both pages by: March 3, 2005**

## SUPPLEMENTARY PROOF OF LOSS
## LONG TERM DISABILITY - CLAIMANT'S STATEMENT

1. Insured's full name and address (Please Print) Yousif Toma

Home Telephone _773 871 5857_  Employer's Telephone _____

Date of Birth: 01/07/1950

Policy No.(s) _____

Social Security No. _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_

2. Cause of Disability: _Herniated Disc / persistant rectal bleeding_

3. Have you received medical attention since your last report? Yes ☐ No ☐ If "Yes", list:

   (a) Names of Doctors _Dr Wesley Vapor Chemosurgeon CDO_

   (b) Dates of Treatment _July 2004_

4. Have you been hospitalized or undergone surgery since your last report? Yes ☐ No ☒ If "Yes", list:

   (a) Name of Hospital

   (b) Dates of Confinement _no_

   (c) Type of Surgery

5. (a) What are your present complaints?

   (b) Briefly describe your present daily activities: _Back pain / leg numbness / back pain / rectal blead_

6. Date disability began: _10 / 27 / 03_
   Month Day Year

   (a) Are you still totally disabled and unable to perform all the duties of your regular occupation? Yes ☒ No ☐

   If "Yes" when do you expect to return to your regular occupation? ___/___/___ _not able_
   Month Day Year

   If "No" when did you return to your regular occupation? ___/___/___ _n/a_
   Month Day Year

   (b) If partially disabled, when did you begin working at your regular occupation? _n/a_ ___/___/___
   Month Day Year

   (c) What important occupational duties have you been unable to perform during such partial disability? _none_

   (d) Are you now gainfully employed in other than your regular occupation? Yes ☐ No ☒

   If "Yes", date you commenced such duties: ___/___/___
   Month Day Year

   (e) Briefly describe the job and nature of duties performed:

7. (a.) Are you now eligible for, have you applied for, or are you now receiving income benefits from:

| Social Security Disability | | Social Security Retirement | | Other Income Benefits: | Yes | No |
|---|---|---|---|---|---|---|
| Yes ☒ | No ☐ | Yes ☐ | No ☒ | Unemployment Compensation | ☐ | ☒ |
| | | | | State Disability Benefits | ☐ | ☒ |
| ☐ applied | | ☐ applied | | No-Fault Auto Insurance | ☐ | ☒ |
| ☒ approved | | ☐ approved | | Pension Disability | ☐ | ☒ |
| ☐ denied | | ☐ denied | | Regular Retirement | ☐ | ☒ |
| ☐ under appeal | | ☐ under appeal | | Worker's Compensation | ☐ | ☒ |
| | | | | Any other income benefit (Federal, State, VA, etc.) | ☐ | ☒ |

   (b.) If answer is "Yes", please give details including amounts received, effective date and name of company and organization or government agency from which benefits are being received. Attach documentation or copies of awards that you have not previously provided.

The statements above are true and complete to the best of my knowledge.

Insured's Signature _____   Date _2/18/02_

# Disability RMS

*Committed to a higher standard*

**Please return completed form to:**

**Disability Reinsurance Management Services, Inc.**
One Riverfront Plaza
Westbrook, ME  04092-9700
Phone: (877) 489-9784
Fax: (866) 376-9480

## Please Return By:  March 3, 2005

## ATTENDING PHYSICIAN'S STATEMENT
### THE PATIENT IS RESPONSIBLE FOR THE COMPLETION OF THIS FORM WITHOUT EXPENSE TO THE COMPANY

Patient's Name:  Yousif Toma                    Date of Birth:  01/07/1950

### 1. HISTORY
a. When did symptoms first appear or accident happen?          Date: 10/27/03
b. Date patient ceased work because of disability               Date: 10/27/03
c. Is condition a result of patient's employment?               ☒ Yes  ☐ No
d. Is condition due to a motor vehicle accident?                ☐ Yes  ☒ No
e. Has patient ever had a same or similar condition? (If yes, please describe.)  ☐ Yes  ☒ No
f. Names and addresses of other treating physicians:

g. Have you ever treated patient prior to this? (If yes, for what and when?)     ☒ Yes  ☐ No
   En CAD

h. Does patient have other disability coverage? (If yes, please identify.)       ☒ Yes  ☐ No

### 2. DIAGNOSIS
a. Diagnosis (including any complications):  Herniated Disc

b. Subjective symptoms:  numbness / pain / cant walk

c. Objective findings (include current X-rays, EKG's, laboratory data and any clinical data):
   MRI confirmed C-4-C5 disc

### 3. DATES OF TREATMENT
a. Date of first visit      Date: 10/27/03
b. Date of last visit       Date: 2/10/05
c. Frequency:  ☐ Weekly  ☒ Monthly  ☐ Other(specify)

### 4. NATURE OF TREATMENT (surgery, medications, etc.)

### 5. EXTENT OF DISABILITY                    ***IMPORTANT***

a. Are you aware of the main duties the patient performs in his/her usual work or business?  ☒ Yes  ☐ No
b. Are you aware of the patient's background (education, training, experience, etc.)?         ☒ Yes  ☐ No

Describe any restrictions (what your patient should not do ):
   No physical labor

Describe any limitations (what your patient cannot do ):
   Same

### 6. CARDIAC (if applicable)
a. Functional Capacity (American Heart Association):  ☐ Class 1 (No Limitation)     ☐ Class 3 (Marked Limitation)
                                                      ☒ Class 2 (Slight Limitation) ☐ Class 4 (Complete Limitation)

b. Blood Pressure (last visit):
   130 / 80
   Systolic  Diastolic

7. **PHYSICAL IMPAIRMENT (As defined in Federal Dictionary of Occupational Titles)**

- [ ] Class 1 -- No Limitation of functional capacity; capable of heavy work* No restrictions (0-10%)
- [ ] Class 2 -- Medium manual activity* (15--30%)
- [ ] Class 3 -- Slight limitation of functional capacity; capable of light work* (35-55%)
- [ ] Class 4 -- Moderate limitation of functional capability; capable of light work* (35-55%)
- [x] Class 5 -- Severe limitation of functional capacity; capable of clerical/administrative (sedentary) activity* (60-70%)
- [ ] Remarks:

8. **MENTAL/NERVOUS IMPAIRMENT (If applicable)**

- [ ] Class 1 -- Patient able to function under stress and able to engage in interpersonal relations (No limitations).
- [ ] Class 2 -- Patient able to function in most stress situations and engage in limited interpersonal relations (Slight Limitation).
- [x] Class 3 -- Patient able to engage in only limited stress situations and engage in limited interpersonal relations (Moderate limitation).
- [ ] Class 4 -- Patient unable to engage in stress situations or engage in interpersonal relations (Marked limitation).
- [ ] Class 5 -- Patient has significant loss of psychological, physiological, personal and social adjustment (Severe limitation).
- [ ] Remarks:

Do you believe the patient is competent to endorse checks and direct the use of the proceeds?   [ ] Yes   [ ] No

9. **PROGRESS**

- a. Has patient [ ] Recovered?   [ ] Improved?   [x] Unchanged?   [ ] Regressed?
  If recovered, date patient able to work: Date:
- b. Is patient [ ] Ambulatory?   [ ] House confined?
- c. Has patient been hospital confined?   [ ] Bed confined?   [ ] Hospital confined?   [ ] Yes   [ ] No

Please give name and address of hospital: Swedish Covenant Hospital 5145 N. California   Admitted _____ Discharged _____ chg 9/16 05

- d. Do you expect any significant improvement in the future?
  - (1) If yes, when will patient recover sufficiently to perform the duties of:
    - (a) HIS/HER REGULAR JOB?   not able   [ ] Yes [x] No   [ ] 1 Month   [ ] 1- 3 Months   [ ] 3- 6 Months   [ ] Never
    - Month ___ Day ___ Year ___
    - (b) ANY OTHER TYPE OF WORK   not able   [ ] 1 Month   [ ] 1- 3 Months   [ ] 3- 6 Months   [ ] Never
    - Month ___ Day ___ Year ___
  - (2) If no, please explain:   Corony Disease / persistent rectal bleed / disc herniation
- e. If you do not expect patient to be able to return to his/her occupation or any other occupation, would you support his/her candidacy for Social Security Disability benefits?   [ ] Yes   [ ] No

10. **REHABILITATION**

|  | PATIENTS JOB | | ANY OTHER WORK | |
|---|---|---|---|---|
| a. Is patient a suitable candidate for further rehabilitation services? (i.e., cardiopulmonary program, speech therapy, etc.) | [ ] Yes | [x] No | [ ] Yes | [ ] No |
| b. Can present job be modified to allow for handling with impairment? | [ ] Yes | [x] No | [ ] Yes | [ ] No |
| c. When could trial employment commence? | mo. ___ day ___ yr. ___ | | mo. ___ day ___ yr. ___ | |
|  | [ ] Full-time [ ] Part-time | | [x] Full-time [ ] Part-time | |
| d. Would vocational counseling and/or retraining be recommended? | [ ] Yes | [x] No | [ ] Yes | [ ] No |

11. **REMARKS:**   Multiple conditions prevent return to work.

Oleh Terlecky
Name of Attending Physician (Print)

OLEH TERLECKYJ, M.D.
5145 N. CALIFORNIA AVE, SUITE 405
CHICAGO, IL 60625
TEL - 773-275-5559
FAX - 773-275-5058

Street Address

State   Zip Code

Signature   Date   2/16/05

Degree _____ Phone _____   Fax _____
City or Town _____

# Disability RMS
*Committed to a higher standard*

## AUTHORIZATION FOR RELEASE OF INFORMATION (excluding psychotherapy notes)
### (HIPAA COMPLIANT)
### (to be signed and dated by the insured/claimant)

I authorize any licensed physician, any other medical practitioner or provider, pharmacist, hospital, clinic, other medical or medically related facility, federal, state or local government agency, insurance or reinsuring company, the Social Security Administration, consumer reporting agency or employer having information available as to diagnosis, treatment and prognosis with respect to any physical or mental condition and/or treatment of me, and any non-medical information about me (including any information, data or records regarding my Social Security, FICA earnings history, Worker's Compensation, State Disability, pension, credit, earnings and employment history) to give any and all such information to authorized representatives of Disability Reinsurance Management Services, Inc. (Disability RMS), and United States Life Insurance Company in the City of New York *excluding psychotherapy notes*, and including, but not limited to, any other mental or psychiatric records, medical, dental and hospital records (including psychiatric, alcohol, and drug abuse, and **HIV/AIDS***  information) which may have been acquired in the course of examination or treatment. I understand that the information obtained by use of this authorization will be used by Disability RMS, United States Life Insurance Company in the City of New York and the above-described representatives to evaluate and adjudicate my current disability claim, and may be re-disclosed to (a) any medical, investigative, financial or vocational specialist or entity, or (b) any other organization or person, employed by or representing Disability RMS or United States Life Insurance Company in the City of New York to assist with the evaluation and adjudication of my current disability claim and/or to report aggregate claims information to United States Life Insurance Company in the City of New York. I understand that information used or disclosed pursuant to this authorization may be subject to redisclosure by the recipient and may no longer be protected by HIPAA's Privacy rules, or any other federal or state law.

This authorization is valid during the pendency of my claim and shall expire on the date my claim finally ends. A photocopy of this authorization is as valid as the original. I understand that my authorized representative or I have the right to request and receive a copy of this authorization and the information to which it pertains.

I understand that I have the right to revoke this authorization by notifying Disability RMS in writing, of my revocation. However, such revocation is not effective to the extent that Disability RMS and/or United States Life Insurance Company in the City of New York have relied previously upon this authorization for the use or disclosure of my protected health information. In addition, I understand that my revocation of, or my failure to sign this authorization may impair Disability RMS' and United States Life Insurance Company in the City of New York's ability to evaluate my current disability claim and as a result may be a basis for denying that current disability claim for benefits.

*If you reside in **California:** this authorization excludes the release of Human Immunodeficiency Virus (HIV) and Autoimmune Deficiency Disorder (AIDS) information and test results. Separate authorizations signed by the insured claimant, or employee-claimant (for self-insured business) as to each specific test.

**If you reside in **Connecticut, Maine, or Massachusetts:** this authorization excludes the release of information about Human Immunodeficiency Virus (HIV) and Autoimmune Deficiency Disorder (AIDS). A separate authorization signed by the insured claimant, or employee-claimant (for self-insured business) as to each specific test.

***If you reside in **Vermont:** This authorization EXCLUDES the release of any information about previously administered HIV-related tests, including but not limited to tests for HIV antibodies, T-Cell counts, AIDS or ARC. The proposed insured is NOT AUTHORIZING Disability RMS to forward the results from any new test, requested by us, to any outside, non-affiliated company or entity not under specific contract with us to perform underwriting services, and Disability RMS shall comply, as applicable with the provisions of Title 8, Section 4724 (20) of the Vermont Statutes.

Claimant Name: Yousif Toma

Claimant Signature (or Authorized Representative) _____    Date: 2-16-05.

Date of Birth: 01/07/1950
Description of Personal Representative's Authority [If applicable]:
[*If signed by authorized representative, attach verification of identity]

TOTAL P.05

# EXHIBIT 3
# To Affidavit



**SSDC**

*Innovative Solutions
for Health & Disability
Savings*

39500 High Pointe Boulevard
Suite 350
Novi, MI 48375
(248) 344-4444

# Facsimile Transmittal

To: Stu Curran – Disability RMS          Fax: (207) 591-3048

From: Nanette Lorenz          Fax: (248) 344-1623          Phone: (248) 277-9249

Date:     Friday, March 25, 2005          Pages (including cover):     2

RE:  Yousif Toma MBR

☐ Urgent          ☐ For Review          ☐ Please Comment          ☐ Please Reply          ☐ Please Distribute

Comments:

Following is the requested MBR.  I have requested the dependent benefit information and will
fax upon receipt.

RECEIVED
MAR 2 5 2005
By_____

This transmittal is intended only for the use of the individual or entity to which it is addressed, and may contain information that is
privileged, confidential and exempt from disclosure under applicable law. If the reader of this transmittal is not the intended recipient,
you are hereby notified that any dissemination, or distribution, or copying of this communication is strictly prohibited. If you have
received this communication in error, notify us immediately by telephone, and return the original message to us at the above
address via the U.S. Postal Service. You will be reimbursed for your postage expense. Thank you.

```
    ***  REC 2005081  102654 HB610FE0 AVOB  CIPQYAD  P..D  (F-AVO )  ***
```

```
FACT      DTE:03/22/05  SSN: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  BIC:A   DOC:C43 UNIT:DSI      PG: 001
STATUS    MBR YES LOU-03/22 DATA FILES YES LOU-03/22 SSACCS NO  LOU-03/21
          CPS NO
ACCOUNT   PCOC-7 NOP-05 SP-M CIS-N TAC-D LUM-03 LMM-03/05 ERC-03 FLI-M  SEC-D
          CDY-0 DRAMS READ
INSURED   CLAIM TYPE-DISABILITY DATE OF FILING-01/22/2004 FIRST MET-10/1998
          LAST MET-12/2008  WAIT PER START-11/2003  NONX NO GMS USED-10/1998
          EXC NO GMS USED-10/1998  20/40 EXCLUSION-TEST MET
          )20/40 NON EXCL-TEST MET  DIB QC REQUIRE-20  DIB QC EARNED-40
          FULL INS EXCL-TEST MET  FULL INS NONEXCL-TEST MET
          FULL QC REQUIRE-31  FULL QC EARNED-40  CURR QC EARNED-00
          HLTHBEN QC EARN-00
PMT CYC   CYI-2 PCEFD-09/08/2004 PCCOM-09/04 PCCR-I
PRIMARY   YOUSIF TOMA DOB-07/01/1950 LSPA-$0.00
PIA HIS   04/04 $1794.90 L2  FMAX-$2692.30D ELY-03 IME-$5237 YOC-00
          12/04 $1843.30 L2K FMAX-$2764.90D ELY-03 IME-$5237 YOC-00
ACE       EFFECTIVE-04/2004 100%-$6050 80%-$4840.00 CATEGORY-ORIGINAL ACE
          METHOD-HIGH1 EARN YRS  BASE START-1999
INJURY    DATE-10/27/2003 COMP SOURCE-STATE WC CLAIM NUMBER-03 WC 53398
          STATE-IL  CLAIM PENDING  EMPLOYER-TEMPLE STEEL  LS MED EXP- $0.00
          NOT PROVEN  LS ATTY EXP- $0.00  NOT PROVEN  LS RELATED EXP- $0.00
          NOT PROVEN  LS SPECIAL EXP- $0.00  NOT PROVEN
          1 TIME MED EXP- $0.00 NOT PROVEN  1 TIME ATTY EXP- $0.00
          NOT PROVEN  1 TIME RLTD EXP- $0.00  NOT PROVEN
WCPDBOFF  START-04/2004 WC TYPE-OFFSET PENDING  PDB MONTHLY AMT- $0.00
          WC MONTHLY AMT- $0.00
PAYMENT   PIC-A  MPA-$1843.00 DOC-499 SCC-14141  RD-10/04/04 LAP-T PSC-C
          F/LLOA-2/4  ZDPC-094 EDA-09/08/04 EDL-09/08/04
TELE NO   BTN-773-871-5859 BTC1-O CPND-09/04
PAYEE     YOUSIF TOMA
ADDRESS   4309 N WOLCOTT AVE      2ND FLR
          CHICAGO IL 60613-1019
BANK      RTN-071002503 DAN-C7339079808 BDCD-09/08/04
HLD CHK   $1794.00 FOR 09/04 TOH-5 SPM-TAPE
BENEFIT   BIC-A  YOUSIF TOMA SB-M DOB-07/01/1950 B  DOEI-04/04 DOEC-04/04
          ABN-3TJD LAF-C  MBP-$1843.00 DRD-10/04/04 LANG-E TOC-5
BENE ENT  START-04/2004 DATE OF FILING-01/22/2004 APP RECEIPT-01/22/2004
          ID CODE-A  CUR ENT CODE-DISABLED  FULL RETIRE AGE-06/2016
DIB       DDO-10/27/03 DIG-7240 SDIG-4280 DOED-04/04 DSD-09/04
CITIZEN   START-05/06/1993 COUNTRY-UNITED STATES PROVEN
HISTORY   04/04  $1794.90 $  0.00 900  01      R       $1794.00
          12/04  $1843.30 $  0.00 300  01      R       $1843.00
```

```
+++ TRANS UPDATED THRU 03/22 +++
```

```
TRANS     RD-9/08/04 LAP-X    MCS PIC-A B2 C1 C2 C3
          RD-9/09/04 LAP-TB   TITLE II PROCESS PIC-A B2 C1 C2 C3
          RD-10/04/04 LAP-TB  TITLE II PROCESS PIC-A B2 C1 C2 C3
          RD-1/18/05 LAP-U    ST EXCHG ANNOT PIC-C1 C2 C3
          RD-1/27/05 LAP-TB   TITLE II PROCESS PIC-C3
          RD-3/07/05 LAP-U    ST EXCHG ANNOT PIC-B2
```